The Honorable James Robart

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| DWIGHT HOLLAND, | NO.  12-cv-0791 JLR |
| Plaintiff, | STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KING COUNTY ADULT DETENTION, KING COUNTY et al., KING COUNTY DISTRICT COURT EAST DIVISION-Redmond Courthouse et al., WASHINGTON STATE DEPARTMENT OF LICENSING, et al., WASHINGTON STATE PATROL et al, OFFICER WSP ANTHONY BROCK in his individual and official capacity as Washington State Patrol officer, LAKEYSHA NICOLE WASHINGTON in her individual and official capacity as Prosecuting attorney, KING COUNTY PROSECUTING ATTORNEY'S OFFICE et al., GARY WESTSIDE TOWING LLC, | **NOTE ON MOTION CALENDAR FRIDAY, MAY 31, 2013** |
| Defendants. | |

## I.     INTRODUCTION

This case arises from a straight-forward DUI arrest of *pro se* plaintiff Mr. Holland ("Holland"), where his license was revoked because he refused to take the breath test. Holland's arrest was recorded by the Washington State Trooper's in-car video camera.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1    Based on this arrest, Holland has sued nine defendants, including the Prosecutor and the

2    District Court, and has asserted 15 causes of actions.  He claims he was arrested for "driving

3    while black" – not because of speeding or DUI.  He seeks $2.5 million dollars.

## II.    RELIEF REQUESTED

5    Defendants Washington State Patrol Trooper Anthony Brock, Washington State Patrol,

6    and the Washington State Department of Licensing ("State Defendants" or "defendants")

7    respectfully request the court dismiss *pro se* plaintiff's claims against them on several grounds.

8    First, Holland has failed to properly serve them within the time allocated under FRCP 4(m).

9    Second, all of his state tort claims are barred because he failed to comply with the claims-filing

10   statutes; he failed to file a claim for damages.  Third, the Washington State Patrol ("WSP") and

11   the Department of Licensing ("DOL") cannot be sued under 42 U.S.C. §1983; neither are

12   persons under the Act, and the Eleventh Amendment bars these §1983 claims.  Further, he

13   received "due process" from DOL when his license was revoked for his refusal to take the

14   breath test.   Fourth, Holland's §1983 claims against Trooper Brock should be dismissed

15   because Trooper Brock had reasonable suspicion to conduct a traffic stop for speeding, and he

16   had probable cause to arrest for DUI.  Fifth, Trooper Brock is entitled to qualified immunity.

17   Finally, Holland cannot state any claims against any defendants.   Consequently, all of

18   Holland's claims against the State Defendants should be dismissed *with prejudice*.

## III.    STATEMENT OF FACTS

### A.    Probable Cause Existed to Arrest Holland for Speeding and DUI.

21   The arrest and transport of Holland was audio and video recorded; these recordings are

22   provided to the court with this motion.[1]  (The in-car video camera has an angled perspective of

23   the arrest because the patrol vehicle is angled behind Holland's vehicle for safety reasons.)

---

[1] Exhibit 1 (DVD of In-Car Video Recordings) to *Declaration of Washington State Patrol Trooper Anthony Brock in Support of State Defendants' Motion for Summary Judgment* ("Trooper Brock Decl.").  Track "**B_T16@...**" is the recording of the arrest.  Track "**C_716@...**" is the recording of the transport of Holland to the police station.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1

**1.      Holland was Driving 58 mph in a 45 mph Zone.**

2      Early Saturday morning, on September 16, 2011 at approximately 1:32 a.m.,

3  Washington State Patrol Trooper Anthony Brock ("Trooper Brock") was parked just south of

4  the 1st Avenue Bridge (on the left shoulder of southbound SR-509).[2]   He was working speed

5  enforcement in a marked patrol vehicle.  Trooper Brock observed a pickup truck crossing over

6  the bridge, approaching his vehicle from the rear.  Trooper Brock's Radar clocked this vehicle

7  traveling 58 mph in a 45 mph zone.  This was the only vehicle approaching Trooper Brock at

8  the time his Radar clocked this speed.  Trooper Brock activated his patrol vehicle's emergency

9  lights and proceeded to pull over the pickup truck.  The driver was later identified as Holland.[3]

10      As can be seen on the video, Trooper Brock contacted the vehicle on the driver's side.

11  Trooper Brock did not stop Holland because Holland was "driving while black," as he alleges.

12  Trooper Brock stopped Holland because he was speeding.  In fact, Trooper Brock was not

13  aware of Holland's race or ethnicity until he was at his driver's side window.[4]

14      The driver (Holland) rolled down the driver's window approximately one-half inch.[5]

15  Holland attempted to talk with Trooper Brock with his head turned away from Trooper Brock.

16  As can be heard on the video, Trooper Brock used a very professional, polite tone with

17  Holland.  He explained he clocked him going 58 mph in a 45 mph zone.  Trooper Brock asked

18  Holland to roll down the window because he could not hear him.  (In the video, the loud

19  background noise of passing cars can be heard.)  Holland rolled the window down another half

20  inch, but would not roll it down any further.  Through the opening in the window, Trooper

21  Brock smelled an obvious odor of alcohol coming from inside the vehicle. Holland stated he

22

23

24          [2] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.  The block citations throughout this
    "Statement of Facts" are to the narrative report of Trooper Brock.

25          [3] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.
           [4] Trooper Brock Decl., at ¶14.

26          [5] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.

1    was coming from a friend's house.  Trooper Brock observed that Holland's eyes were very red,

2    bloodshot and droopy.  Trooper Brock asked Holland to exit the vehicle.[6]

**2.      Holland Exhibited Signs of Intoxication and Refused Field Sobriety Tests.**

4         Once Holland was outside of his vehicle, Trooper Brock asked him how much alcohol

5    he had to drink that night.  Holland responded: "I'm pleading the 5th, Sir."  Trooper Brock

6    asked him if he would do some voluntary field sobriety tests.  Holland responded: "I'm

7    pleading the 5th, Sir."  Trooper Brock explained to him that he wanted to make sure that

8    Holland was "OK" to drive.  Trooper Brock repeatedly asked him if he wanted to perform the

9    tests, and each time Holland refused to say "yes" or "no"; he just stated he pleaded the 5th and

10   did not want to incriminate himself.  He refused to participate in any field sobriety tests.[7]

11        While talking with Holland, Trooper Brock smelled alcohol on his breath.  As Holland

12   stood in front of Trooper Brock at the front of Holland's truck, Holland had a constant sway

13   and repeatedly reached back and used the front of his truck for balance.  After considering all

14   of the above indicators, Trooper Brock formed the opinion that Holland was under the

15   influence of intoxicants and unable to operate a motor vehicle safely.  Holland was placed

16   under arrest for driving under the influence ("DUI").[8]

17        Prior to placing Holland in the backseat of his patrol vehicle, Trooper Brock

18   handcuffed Holland.  As Holland has wide shoulders, Trooper Brock combined two sets of

19   handcuffs to make them longer in length.  Seconds after Holland was gently seated in the

20   backseat, he complained his handcuffs were tight.  Trooper Brock patiently explained that he

21   checked the handcuffs before placing him in the backseat, and they were not too tight.  As

22   Trooper Brock explained and Holland acknowledged (on the recording), handcuffs are not

23   built for comfort.  Trooper Brock explained that handcuffs are oval-shaped and, because

24   Holland was rotating his wrists causing them to bind with the cuffs, he was causing himself

25

26
      [6] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.
      [7] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040005 ("Sobriety Tests").
      [8] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.

1   some discomfort.  As a courtesy to Holland, he helped Holland back out of the patrol car and

2   adjusted the handcuffs again.  He explained to Holland that the handcuffs were not too tight,

3   and demonstrated that he could get two fingers between the cuffs and his wrists.  The audio of

4   this exchange is on the recording.[9]  After Trooper Brock adjusted the handcuffs, Holland never

5   complained to Trooper Brock of any discomfort from the handcuffs.[10]  (Holland's King County

6   Jail records show he did not make any complaints about pain, discomfort, or any injuries from

7   the handcuffs.)[11]

8       Trooper Brock read Holland his Miranda warnings and asked him if he understood

9   them.  Holland responded: "No, I do not and I'm not giving up my rights.  I'm reserving my

10  rights under UCCC 1-308."[12]  Trooper Brock advised Holland that he was not asking him to

11  give up his rights, but was asking him if he understood them.  Holland responded: "I'm

12  reserving my rights.  I'm waiving my benefits and privileges under UCC 1-08."[13]

13      Trooper Brock then requested a tow truck to impound Holland's truck.[14]

14      Trooper Brock transported Holland to the Tukwila Police Department.  (Holland's

15  transport was also video recorded, with the camera facing Holland.  Like the arrest footage, the

16  transport footage shows the transport was uneventful.[15])  During this transport, the patrol car

17  was filled with the smell of intoxicants from Holland.[16]

18

19

20

---

[9] Exhibit 1 (DVD) to Trooper Brock Decl., Track "**B_T16@...**," at 1:38:40 seconds to 1:41:12 seconds.
(Note that 1:38:40 is the time stamp, and refers to 1:38 a.m. at 40 seconds.)

[10] Trooper Decl., at ¶15.

[11] *Declaration of Tobin Dale in Support of State Defendants' Motion for Summary Judgment* ("Dale
Decl."), at ¶4.

[12] Exhibit 1 to Trooper Brock Decl., Track "**B_T16@...**," at 1:42:00 seconds to 1:42:18 seconds.

[13] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.

[14] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040012 ("Uniform Washington State
Tow/Impound and Inventory Record").

[15] Exhibit 1 to Trooper Brock's Decl., Track "**C_716@...**" (which is the recording of the transport of
Holland to the police station).

[16] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.

1        **3.      Holland Refused the Breath Test.**

2        At the Tukwila Police Department, Trooper Brock read Holland his Miranda warnings

3   again, as well as the "Implied Consent Warning for Breath" test.[17]  Holland repeatedly stated

4   he pled the 5th and was not going to do anything to incriminate himself.  Trooper Brock asked

5   Holland if he would submit to a breath test.  Holland responded: "I'm not going to do anything

6   to incriminate myself."  Trooper Brock patiently advised Holland that this was a "yes" or "no"

7   question and that if he did not give an answer then Trooper Brock would assume that he

8   refused.  Holland responded that this was a trick question, and that he was not going to do

9   anything to incriminate himself.[18]  Trooper Brock took these responses as a refusal to submit to

10  the breath test and processed him as a refusal.[19]

11       At no point in time did Trooper Brock use any derogatory language or racial slurs

12  against Holland.[20]  At all times, Trooper Brock was polite and professional with Holland, as

13  evidenced on the audio and video recording.[21]

14  **B.   Holland Received "Due Process" from DOL: His Driver's License Was Revoked**
        **Because He Refused the Breath Test.  Holland Never Requested A Hearing.**
15

16       On September 16, 2011, the date of Holland's DUI arrest, Trooper Brock read Holland

17  the "Implied Consent Warning for Breath Form."  This warning specifically provided:

18       1.   YOU ARE NOW ADVISED THAT YOU HAVE THE RIGHT TO
              REFUSE THIS BREATH TEST; AND THAT IF YOU REFUSE:
19
             (A)  YOUR DRIVER'S LICENSE, PERMIT, OR PRIVILEGE TO
20                DRIVE WILL BE REVOKED OR DENIED BY THE
                  DEPARTMENT OF LICENSING FOR AT LEAST ONE
21                YEAR…[22]

22

23       [17] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040001-6 (DUI Arrest Report); *see* 003 ("Implied
    Consent Warning for Breath").
24       [18] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040007-8.
         [19] Exhibit 2 to Trooper Brock Decl., at Bates Stamp 90040001-6 (DUI Arrest Report).
25       [20] Trooper Brock's Decl., at ¶16.
         [21] Exhibit 1 to Trooper Brock's Decl.
26       [22] Exhibit 1 to Trooper Brock's Decl., at Bates Stamp 90040003.

1    Holland, by his signature, acknowledged that the "Implied Consent Warning for Breath" form

2    had either been read by or to him.[23] He wrote in his handwriting: "I heard what you read."[24]

3           After receiving this warning, Holland refused the breath test. Accordingly, he received

4    from Trooper Brock "written notice of my right to hearing including the steps required to

5    obtain a hearing…," as acknowledged by his signature on the DUI Arrest Report.[25]

6           By DOL's letter dated September 30, 2011, Holland received "Notice of Revocation."[26]

7    This Notice informed him, among other things, that his driving privileges would be revoked for

8    "1 year" effective November 16, 2011.  This revocation is mandated by state statutes.  *See*

9    RCW §§ 46.20.308 and 46.20.3101.  This Notice specifically advised him:

10          You can also contest this action by submitting a Driver's Hearing Request
            form or written request along with $200 (unless you provide proof of
11          indigence), postmarked within 20 days from the date of your arrest.
            Failure to submit a complete and timely request will be considered a
12          waiver of your right to a hearing.  You'll find all the necessary forms on
            our website.[27]
13

14   Holland received this Notice; he filed it with his Complaint.[28]   Holland, however, never

15   requested a hearing.  He did not submit a Driver's Hearing Request form or written request.[29]

16   Effective November 16, 2011, his driving privileges were revoked.   To date, his driving

17   privileges have not been restored because he has not provided DOL with financial

18   responsibility insurance for the future (an SR 22 Insurance Filing), or passed all required tests

19   for driving a vehicle.[30]   Incidentally, on November 15, 2011, the day before his license was

20   revoked, Holland received a ticket for speeding in a school zone.  He was found guilty.[31]

21          _____
                [23] Exhibit 1 to Trooper Brock's Decl., at Bates Stamp 90040003.
22              [24] Exhibit 1 to Trooper Brock's Decl., at Bates Stamp 90040003.
                [25] Exhibit 2 to Trooper Brock's Decl., at Bates Stamp 90040001.  *See* the Checked Box near middle of
23   page followed by the signature block signed by Holland.
                [26] Exhibit 1 (Notice of Revocation) to *Declaration of Carla Weaver-Groseclose* ("Weaver-Groseclose
24   Decl.").  Holland filed this Notice as Exhibit E to his First Amended Complaint.  *See* ECF Docket No. 7, p. 39.
                [27] Exhibit1 (Notice of Revocation) to Weaver-Groseclose Decl.
25              [28] Holland filed this Notice as Exhibit E to his First Amended Complaint.  *See* ECF Docket No. 7, p. 39.
                [29] Weaver-Groseclose Decl., at ¶3.
26              [30] Weaver-Groseclose Decl., at ¶5.
                [31] Weaver-Groseclose Decl., at ¶6.  *See also* Exhibit 2 to Weaver-Groseclose Decl.

STATE DEFENDANTS' MOTION FOR                          7                  ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                                      Torts Division
NO.  12-cv-0791 JLR-MAT                                                        800 Fifth Avenue, Suite 2000
                                                                                  Seattle, WA 98104-3188
                                                                                      (206) 464-7352

**C.      Holland's Criminal Matter: Judge Found Probable Cause for DUI Arrest.**

Following his arrest, Holland was charged with DUI.  The King County District Court made a "Finding of Probable Cause" on January 9, 2012:  Specifically, the court found:

> After a careful review of the files and records herein including the statement of probable cause executed by the citing law enforcement officer along with any report submitted by that officer and any accompanying documentation to that report.
>
> THE COURT HEREBY FINDS PROBABLE CAUSE EXISTS that on 09/16/2011 the crime of DUI may have been committed.[32]

(It appears this charge was dismissed before trial on August 3, 2012.[33])

**D.      Holland Has Not Properly Served the Summons and Complaint.**

In May 2012, Holland commenced this lawsuit.[34]  In August 2012, he filed a "First Amended Complaint."[35] He has sued nine defendants, including the Prosecutor and the District Court, and has asserted 15 causes of actions for which he seeks $2.5 million dollars.

On December 7, 2012, the court issued an Order to Show Cause as to why his case should not be dismissed under FRCP 4(m) for failing to serve the defendants.[36]  Despite the court's order, the State Defendants have not been properly served with a summons and complaint in this matter.  It appears Holland attempted to "serve" the State Defendants by mail.[37]  He has not filed any affidavits of service with the court regarding service on the State Defendants.[38]

Accordingly, the State Defendants raised this as the first affirmative defense in their Answer,[39] as well as in the parties' Joint Status Report.[40]

---

[32] Exhibit 2 ("Finding of Probable Cause") to Dale Decl.
[33] ECF Docket No. 12, pp. 9-10.
[34] ECF Docket No. 1.
[35] ECF Docket No. 7.
[36] ECF Docket No. 9.
[37] *See* Trooper Brock Decl., at ¶17.  *See* Dale Decl., at ¶3.
[38] Plaintiff has filed some affidavits of service with the court, but none are for service on the State Defendants.  *See* ECF Docket No. 10 (exhibits to his motion), pp. 5-7.
[39] ECF Docket No. 16 (State Defendants' Answer), p. 6, ¶1.
[40] ECF Docket No. 20 (Joint Status Report), p. 4, ¶15 (stating "Defendants' position is that the defendants have not been served.")

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1     **E.      Holland Has Not Filed a Tort Claim for Damages.**

2           Holland has not filed a tort claim for damages with the State Risk Management Division

3     of the Office of Financial Management concerning the subject matter of this complaint,[41] as

4     required by RCW §§4.92.100 and 110.  This failure bars all his state tort claims.

5     **F.      Trooper Brock's Training and Exemplary Service as a WSP Trooper.**

6           Holland alleges that the WSP failed to properly train Trooper Brock.  As detailed in his

7     declaration, Trooper Brock is a highly-trained State Trooper, who has an exemplary record of

8     service.[42]  In a nutshell, he has served as a commissioned Trooper since 2001.  He has

9     considerable training in the area of "Driving Under the Influence" ("DUI") and drug

10    recognition.   In 2002, he completed the rigorous program to become a certified Drug

11    Recognition Expert ("DRE"), which included extensive training in standardized field sobriety

12    tests ("SFST").[43]  In 2004, he was selected for the trusted position of being a Field Training

13    Officer ("FTO"). (A FTO trains Cadets with applying law enforcement skills in real-life

14    situations.)[44]  In 2011, he was selected for the "Target Zero Team," whose goal is to reduce

15    serious injury and fatality crashes.  The emphasis is on speed, seatbelt, and DUI enforcement.[45]

16    In 2011, Trooper Brock became an Instructor for the Standardized Field Sobriety Test

17    ("SFST").  He teaches the SFST basic and refresher courses to WSP Troopers and others.[46]

18          Trooper Brock's service has been recognized with distinguished awards, including

19    MADD DUI Enforcement Awards, Award of Merit (2005), Trooper of the Year District 2

20    (2005), Medal of Courage Award (2011), and District 2 DUI Award (2011).[47]

21

22

23          [41] *Declaration of J. Scott Blonien* ("Blonien Decl."), ¶3.
      [42] *See* Trooper Brock Decl.
24    [43] Trooper Brock Decl., at ¶3.
      [44] Trooper Brock Decl., at ¶4.
25    [45] Trooper Brock Decl., at ¶5.
      [46] Trooper Brock Decl., at ¶6.
26    [47] Trooper Brock's Decl., at ¶¶8-10.

1  Given his training and experience, he has received several Special Assignments with

2  the WSP, including the District 2 DUI Squad, District 2 Target Zero Team, and Motorcade

3  Details for President Bush, Vice President Biden, and President Obama.[48]

4  To date, Trooper Brock has made more than 900 DUI arrests.  This lawsuit by *pro se*

5  Holland is the first time Trooper Brock has been sued as a WSP Trooper.[49]

6  Trooper Brock stopped Holland on September 16, 2011 because he was speeding.

7  Trooper Brock was not even aware of Holland's race until he was at his driver's side window.

8  Holland's race had absolutely nothing to do with his arrest for DUI.[50]

## IV.    STATEMENT OF ISSUES

**A.    Whether Holland's claims against the State Defendants should be dismissed for failing to serve the State Defendants within the time required under FRCP 4(m).**

**B.    Whether Holland's state-tort claims against the State Defendants should be dismissed when he has not filed a tort claim for damages with the State Risk Management Division, as required by RCW §§4.92.100 and 110.**

**C.    Whether Holland's §1983 claims against the WSP and DOL should be dismissed because (1) they cannot be sued under §1983 as neither are persons under the Act, and (2) they are entitled to Eleventh Amendment immunity from §1983 claims.**

**D.    Whether Holland's §1983 claims against Trooper Brock should be dismissed because he had reasonable suspicion to conduct a traffic stop for speeding and probable cause to arrest for DUI.**

**E.    Even if Holland's state tort claims were not barred by the claims filing statutes, whether all his tort claims should be dismissed when there is no evidence to support them.**

**F.    Whether the doctrine of qualified immunity bars the §1983 claims against Trooper Brock and state law immunity bars the state tort claims against him.**

## V.    EVIDENCE RELIED UPON

Defendants rely upon the Declaration of Trooper Brock, the Declaration of Carla Weaver-Groseclose, the Declaration of Tobin E. Dale, and the Declaration of J. Scott Blonien, and the records and pleadings in this matter.

---

[48] Trooper Brock Decl., at ¶7.
[49] Trooper Brock's Decl., at ¶11.
[50] Trooper Brock's Decl., at ¶14.

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

# VI.   AUTHORITY AND ARGUMENT

## A.   Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v Catrett*, 477 U.S. 317, 324 (1986).  The non-moving party may not "rely merely on allegations or denials in its own pleadings."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Id.*

As to the issue of qualified immunity for Trooper Brock, where the non-moving party's version of events is blatantly contradicted by the record, "such that no reasonable jury could believe them, [the court] need not rely on those facts for purposes of ruling on the summary judgment motion." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010)(citing *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Defendants are entitled to summary judgment of dismissal.

## B.   Holland's Complaint Should be Dismissed for Failure to Properly Serve the State Defendants Since Filing This Suit Over a Year Ago on May 7, 2012.

Although Holland is proceeding *pro se*, he is still "bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).  A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under FRCP 4.  *Direct Mail Specialists, Inc. v. Eclat Computerized Tech.*, 840 F.2d 685, 688 (9th Cir. 1988).  Without substantial compliance with Rule 4, neither actual notice nor simply naming the defendants in the complaint will provide personal jurisdiction.  *Id*.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1        The Office of the Attorney General is charged with defending "all actions and proceedings

2   against any state officer or employee acting in his or her official capacity."  RCW 43.10.030(3).

3   Under RCW 4.92.020, serving the State in a civil action must be accomplished by service on

4   the Attorney General or by leaving the summons and complaint in the Office of the Attorney

5   General with an assistant attorney general.  *Landreville v. Shoreline Cmty. Coll. Dist. No. 7,* 53

6   Wn. App. 330, 766 P.2d 1107 (1989).  Because this statute is "plainly written," no other

7   method of service will suffice.  *Id.* at 330-31.  Service on an individually-named defendant,

8   such as Trooper Brock, is achieved under both federal and state law by delivering a copy of the

9   summons and complaint to the individual personally, leaving a copy at the individual's

10  dwelling or usual place of abode with someone of suitable age and discretion who resides

11  there, or delivering a copy to an agent authorized by appointment of law to accept service.

12  FRCP 4(e); RCW 4.28.080(15).  None of these in fact occurred.

13       Holland filed his original complaint on May 7, 2012.[51]  He later filed a First Amended

14  Complaint on August 27, 2012.[52]  Per FRCP 4(m), Holland had 120 days – that is, until

15  September 4, 2012 – to serve his Summons and Complaint.  Failure to properly serve results in

16  dismissal of the State Defendants not properly served, absent good cause.  FRCP 4(m).

17       On December 7, 2012, the court issued an Order to Show Cause as to why his case

18  should not be dismissed under FRCP 4(m).[53]  Holland filed a response and certain defendants

19  subsequently filed notices of appearance; therefore, the court discharged this order.  However,

20  in doing so, the court noted: "certain defendants have asserted affirmative defenses concerning

21  the propriety of service of process" and this order "does not address the propriety of any

22  service of process performed in this proceeding."[54]

23

24  _____

25  [51] ECF Docket No. 1.
    [52] ECF Docket No. 7.  The Complaint is attached as Exhibit 1 to Dale Decl.
    [53] ECF Docket No. 9.
26  [54] ECF Docket No. 14, p. 2, fn. 1.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1    Despite the court's order, Holland has not properly served the State Defendants.  He

2  has not filed any affidavits of service regarding service on them.[55]  It appears Holland

3  attempted to "serve" the State Defendants by mail.[56]  The State Defendants raised this as the

4  first affirmative defense in their Answer,[57] as well as in the parties' Joint Status Report.[58]

5    Holland has no "good cause" as to why dismissal is not merited for failing to serve the

6  State Defendants, particularly as they raised this defense at each juncture and given this court's

7  order.  Accordingly, the State Defendants request dismissal of the claims against them.

8  **C.    By not Filing a Claim for Damages, Holland Failed to Comply with the Claim**
       **Filing Statutes, which Bar his Tort Claims Against the State Defendants.**
9

10    Before filing a tort action against the State of Washington or against State employees, a

11  plaintiff is required to file a claim with the risk management division.  *See* RCW 4.92.100;

12  *Levy v. State,* 91 Wn. App. 934, 941, 957 P.2d 1272 (1998).  The state claim-filing statute,

13  RCW 4.92.100, provides in relevant part:

14        All claims against the state, or against the state's officers, employees, or
        volunteers, acting in such capacity, for damages arising out of tortious
15      conduct, must be presented to the risk management division.

16  Further, RCW 4.92.110 provides in relevant part:

17        *No action* subject to the claim filing requirements of RCW 4.92.100 *shall be*
        *commenced* against *the state,* or against any state officer, *employee,* or
18      volunteer, acting in such capacity, for damages arising out of tortious conduct
      *until sixty calendar days have elapsed after the claim is presented* to the risk
19      management division.  [emphasis added]

20  The filing requirements of RCW 4.92.100 are jurisdictional, and create a condition precedent

21  to filing suit against government bodies and employees.  *Levy,* 91 Wn. App. at 941.  This court

22  can afford no remedy to a plaintiff, who failed to comply with the requirement of submitting a

23

24      [55] Plaintiff has filed some affidavits of service with the court, but none are for service on the State
Defendants.  *See* ECF Docket No. 10 (exhibits to his motion), pp. 5-7.

25      [56] *See* Trooper Brock Decl., at ¶17.  *See* Dale Decl., at ¶3.
      [57] ECF Docket No. 16 (State Defendants' Answer), p. 6, ¶1.

26      [58] ECF Docket No. 20 (Joint Status Report), p. 4, ¶15 (stating "Defendants' position is that the
defendants have not been served.")

STATE DEFENDANTS' MOTION FOR         13        ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                         Torts Division
NO.  12-cv-0791 JLR-MAT                            800 Fifth Avenue, Suite 2000
                                                   Seattle, WA 98104-3188
                                                     (206) 464-7352

1    tort claim.  *Id.*  (Although RCW 4.92.100 was amended in 2009, the amendment does not alter

2    the requirement of submitting a tort claim.  *See* RCW 4.92.100.)

3          Under well-settled Washington law, courts have consistently held that the failure to

4    comply with the filing requirements will result in dismissal of the complaint.  *See e.g.*, *Reyes v.*

5    *City of Renton*, 121 Wn. App. 498, 502, 86 P.3d 155 (2004); *Pirtle v. Spokane Pub. Sch. Dist.*

6    *No. 81*, 83 Wn. App. 304, 309, 921 P.2d 1084 (1996).

7          Here, Holland brought this lawsuit alleging tortious conduct against the State Defendants

8    but failed to file a tort claim for damages with the State Risk Management Division concerning

9    the subject matter of his complaint.[59]  This failure is fatal to his tort claims.  *See Levy,* 91 Wn.

10   App. at 941.  Holland's failure to comply with RCW §§4.92.100 and 110 requires dismissal of all

11   his claims against the State Defendants, except for his civil rights claims under 42 U.S.C. § 1983.

12   **D.     The WSP and DOL Cannot be Sued Under 42 U.S.C. §1983 Because Neither are**
         **Persons Within the Meaning of the Act.**

13

14         Holland claims "all defendants" violated his civil rights under 42 U.S.C. §1983.

15   However, the WSP and DOL cannot be sued under §1983.  The United States Supreme Court has

16   previously ruled that states and state agencies are not susceptible to suits under 42 U.S.C. § 1983.

17   *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 70-71 (1989).  Following the decision

18   in *Will*, the Ninth Circuit has consistently dismissed 42 U.S.C. § 1983 claims brought against

19   states or state agencies.  *See ex. Flint v. Dennison*, 488 F.3d 816, 824 (2007); *Wolfe v. Strankman*,

20   392 F.3d 358, 364 (2004); *Hale v. Arizona*, 993 F.2d 1387 (1993).  The WSP and DOL are

21   agencies of the State of Washington.  *See* RCW 43.43.010 (creating the WSP) and RCW

22   46.01.020 (creating DOL).  Accordingly, Holland cannot sue them under §1983.

23   **E.     The WSP and DOL are Immune From §1983 Claims in Federal Court.**

24         As state agencies, the WSP and DOL are entitled to Eleventh Amendment immunity from

25   42 U.S.C. §1983 claims.  Therefore, these claims against them must be dismissed.

26         [59] Blonien Decl., ¶3.

The Eleventh Amendment prohibits a plaintiff from bringing suit against a State in Federal Court, except in the case of a recognized exception to the Eleventh Amendment. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114 (1996); *see also* US Const. Amend. XI; *Welch v. Texas Dep't of Highways and Public Trans.*, 483 U.S. 468, 472, 107 S. Ct. 2941 (1987).  The rationale supporting the Amendment is that States are sovereign entities and therefore must consent to being sued. *Seminole Tribe*, 517 U.S. at 54.  The two recognized exceptions to Eleventh Amendment immunity are congressional abrogation and waiver. *Micomonaco v. State*, 45 F.3d 316, 319 (9th Cir. 1995).

The Ninth Circuit Court has applied Eleventh Amendment immunity to bar § 1981 and § 1983 claims against state agencies in Federal Court. *See Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 200-01 (9th Cir. 1989).  In *Mitchell*, a black teacher sued a California community college district pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 after he was not chosen for a dean position. *Id.* at 199.  The Court dismissed the college district, writing:

> We hold that, under California law, the district is a state entity that possesses eleventh amendment immunity from the appellant's section 1981, 1983, and 1985 claims in damages and for injunctive relief.

*Id.* at 201 (internal citations omitted).

Like the state agency in *Mitchell*, here the WSP and DOL are also entitled to immunity from suit in Federal Court against §1983 claims by virtue of the Eleventh Amendment.

**F.    Holland Cannot Maintain a §1983 Claim Against Trooper Brock.  Reasonable Suspicion and Probable Cause Bars Holland's Claims Against Trooper Brock.**

To state a claim under 42 U.S.C. § 1983, Holland must establish: (1) deprivation of a right secured by the Constitution of the United States or federal laws, and (2) that the alleged deprivation was committed under color of state law. *Am. Mfrs Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999).  Because there were no constitutional right violations, this claim fails.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

15

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1
         **1.**      **The Investigatory Stop: Trooper Brock had Reasonable Suspicion.**

2
      A police officer may seize a person for a brief investigatory stop when the officer has a

3
"reasonable suspicion" to believe that the individual has committed wrongdoing. *See Terry v.*

4
*Ohio,* 392 U.S. 1, 23-27 (1968). Reasonable suspicion requires "specific, articulable facts

5
which, together with objective and reasonable inferences, form a basis for suspecting that a

6
particular person is engaged in criminal conduct." *United States v. Thomas,* 211 F.3d 1186,

7
1189 (9th Cir.2000) (internal quotations omitted). The Fourth Amendment requires a standard

8
of reasonableness, not certainty, and a sufficient probability is the touchstone of

9
reasonableness. *Hill v. California,* 401 U.S. 797, 804 (1971). An investigatory traffic stop is

10
justified if a police officer has a reasonable suspicion to believe that an offense has occurred.

11
*United States v. Lopez-Soto,* 205 F.3d 1101, 1104-05 (9th Cir.2000).

12
      Here, Trooper Brock had reasonable suspicion to conduct an investigatory traffic stop of

13
Holland for speeding. As detailed in the *Statement of Facts*, early Saturday morning at 1:32 a.m.,

14
Trooper Brock observed Holland's truck approaching his vehicle from the rear. His Radar

15
clocked Holland's truck traveling 58 mph in a 45 mph zone.[60] This stop was authorized.

16
         **2.**      **The Arrest: Trooper Brock had Probable Cause to Arrest for DUI.**

17
      During the investigatory traffic stop, Trooper Holland made observations that led him to

18
believe that Holland was driving under the influence. The gravamen of Holland's claims against

19
Trooper Brock is that he was arrested for DUI without probable cause. "A claim for unlawful

20
arrest is cognizable under §1983 as a violation of the Fourth Amendment, provided the arrest was

21
without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266

22
F.3d 959, 964-65 (9th Cir. 2001) (citation omitted). "Probable cause exists when the facts and

23
circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person

24
to believe that a crime has been committed." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1053

25
(9th Cir. 2009). "If an officer has probable cause to believe that an individual has committed even

26
          [60] *See* "Statement of Facts," Section III(A)(1) *supra*.

STATE DEFENDANTS' MOTION FOR          16        ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                            Torts Division
NO.  12-cv-0791 JLR-MAT                   800 Fifth Avenue, Suite 2000
                                          Seattle, WA 98104-3188
                                           (206) 464-7352

a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Visa*, 532 U.S. 318, 354 (2001).

Under Washington State law, "A person is guilty of driving while under the influence…if the person drives a vehicle within this state. . .while the person is under the influence of or affected by intoxicating liquor. . ." RCW 46.61.502.

Here, Trooper Brock had ample probable cause to arrest Holland for DUI, as detailed earlier.[61]   Several factors provided indicia of intoxication.  When stopped, Holland cracked his window a half inch and tried to talk with Trooper Brock with his head turned away.  Trooper Brock smelled the obvious smell of alcohol coming from inside the truck.  He observed Holland's eyes were very red, bloodshot, and droopy.  He asked him to step out of the truck.  When Holland stood at the front of his truck, he had a constant sway and repeatedly reached back and used the hood of his truck for balance.  In talking with Holland, Trooper Brock smelled alcohol on his breath.  Trooper Brock is a Drug Recognition Expert.  After considering all of these indicators, based on his training and experience, Trooper Brock reasonably believed Holland was under the influence of intoxicants and unable to operate his vehicle safety.  Therefore, he prudently placed him under arrest for DUI.[62]   As a matter of law, Trooper Brock had a sound basis to believe he had probable cause to arrest Holland for DUI.  The King County District Court Judge agreed and found that probable cause existed to arrest Holland for DUI.[63]

Probable cause bars Holland's constitutional claims.  A warrantless arrest does *not* violate the Fourth or Fourteenth Amendments if the police officer had probable cause to believe an individual had committed or was about to commit a crime.  *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990) (Fourth Amendment); *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994) (Fourteenth Amendment).  Probable cause is a complete defense to a plaintiff's false arrest Fourth Amendment claim.  *See e.g., Hennick v. Bowling*, 115 F.Supp. 2d 1204,

---

[61] *See* "Statement of Facts," Section III(B)(2) *supra*.
[62] *See* "Statement of Facts," Section III(B)(2) *supra*.
[63] Exhibit 2 to Dale Decl.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1207 (W.D. Wash. 2000) (where "probable cause existed, no triable issue of fact exists on plaintiff's Fourth Amendment claims").

It is unclear if Holland is asserting a claim for "deprivation of liberty without due process of law"[64] against Trooper Brock.   To the extent he is asserting a Fourteenth Amendment claim against him, this claim is simply inexplicable.  For more than two decades it has been unequivocally established that where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior that amendment, "not the more generalized notion of substantive due process, must be the guide for analyzing such a claim."  *Albright v. Oliver*, 510 U.S. at 273.   The Fourth Amendment addresses the matter of pretrial deprivations of liberty.  *Id.* at 274-275.  For the reasons detailed above, he has no Fourth Amendment claim, and thus no Fourteenth Amendment claim either.

**G.      Holland Cannot Maintain any §1983 "Due Process" Claim Against DOL.**

For several reasons, Holland cannot maintain any "due process" §1983 claim against DOL for the revocation of his driving privileges.  First, DOL cannot be sued under §1983.[65]  Second, DOL is entitled to Eleventh Amendment immunity from §1983 claims.[66]  Third, there were no "due process" violations by DOL.  "Any person who operates a motor vehicle within this state is deemed to have given consent…to a test or tests of his or her breath…."  RCW 46.20.308.  When a person refuses a breath test, by state statue DOL is required to revoke the driving privileges "for one year."  RCW 46.20.3101.  Because Holland refused the breath test, his driving privileges were revoked for one year by statute.[67]

Holland received "due process," as detailed earlier in this motion.  At the time of his arrest, he was provided written notice of his right to a hearing.  He acknowledged this by his signature.  DOL then sent him a "Notice Revocation," which again detailed the steps he could

---

[64] Exhibit 1 to Dale Decl., p. 6 (bottom).
[65] *See* Section VI(D) *supra.*
[66] *See* Section VI(E) *supra.*
[67] *See* "Statement of Facts," Section III(A)(3) and (B) *supra.*

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

18

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1    take to contest the revocation of his license.  Holland never requested a hearing.  His driving

2    privileges have not been restored because he has not provided DOL with financial responsibility

3    insurance or passed the driving tests.[68]

4    **H.    Even if Holland's State Tort Claims Were not Barred, These Claims Should be
          Dismissed Because There is no Evidence to Support Them.**

5

6         Holland's state tort claims are barred because he did not file a claim for damages.[69]  Even

7    if they were not (which they are), the claims fail because there is no evidence to support them.

8         **1.    False Arrest and Imprisonment Claim Barred by Probable Cause.**

9         Holland asserts state law claims for "unlawful custodial arrest" and "imprisonment,"[70]

10   which are otherwise known as false arrest and imprisonment.  Under Washington law, false arrest

11   or imprisonment is the unlawful violation of a person's right of liberty or the restraint of that

12   person without legal authority.  *Bender v. City Seattle*, 99 Wn.2d 582, 590-91 (1983).  Probable

13   cause is a complete defense to an action for false arrest and imprisonment.  *Hanson v. City of*

14   *Snohomish*, 121 Wn.2d 552, 563 (1993).  Because Trooper Brock had probable cause to arrest

15   Holland for DUI, these state law claims must be dismissed.

16        **2.    Holland's Truck was Lawfully Impounded and License Lawfully Revoked.**

17        There was no "unlawful search and seizure," as alleged.  There is absolutely no evidence

18   his vehicle was "ransacked."  It was inventoried and lawfully impounded.[71]  RCW 46.55.113(d)

19   provides that a police officer may impound a vehicle "[w]henever the driver of a vehicle is

20   arrested and taken into custody by a police officer."  That is not an unlawful seizure.

21        Holland's license was lawfully revoked, as detailed earlier.[72]  He refused the breath test.

22   This revocation is mandated by state statutes.  *See* RCW §§ 46.20.308 and 46.20.3101.

23

24        [68] *See* Section III(B), which details the "Due Process" provided Holland.  *Supra.*

25        [69] *See* Section VI(C) *supra.*
          [70] Complaint, pp. 8-9.

26        [71] Exhibit 2 ("Tow/Impound and Inventory Record) to Trooper Brock's Decl., Bates stamped 90040012.
          [72] *See* Section III(B) and IV(G).

1

2

**3.      Holland Cannot Maintain Claims for Negligence or Negligent Infliction of Emotional Distress.**

3        Holland alleges these claims based on his DUI arrest and license revocation.[73]  They fail

4   for several reasons.  First, Holland's allegations involve intentional, not negligent, acts.  He

5   alleges negligent because Trooper Brock "over stepped his authority when he took the plaintiff

6   into custody . . ."[74]  *See Kellogg v. State*, 94 Wn.2d 851, 856 (1980) (false imprisonment is an

7   intentional tort); *Wilson v. City of Walla Walla*, 12 Wn. App. 152, 154 (1974)(false arrest is an

8   intentional tort).   Because allegations of intentional conduct cannot support a claim for

9   negligence, his negligence claims fail as a matter of law.  *See e.g., Bolyes v. Kennewick*, 62 Wn.

10  App. 174, 178, *review denied*, 118 Wn.2d 1006 (1991).  Second, he cannot bring a claim for

11  negligent infliction of emotion distress against a police officer because law enforcement do not

12  have a duty to avoid infliction of emotional distress.  *See Keates v. Vancouver*, 73 Wn. App. 257,

13  269, *review denied*, 124 Wn.2d 1026 (1994) ("police officers owe no duty to use reasonable care

14  to avoid inadvertent infliction of emotion distress on the subjects of criminal investigations").

15  Third, Holland cannot prove he has suffered emotional distress by "objective symptomatology"

16  that "must be susceptible to medical diagnosis and proved through medical science."  *Hegel v.*

17  *McMahon*, 136 Wn.2d 122, 135 (1998).  Finally, there is no evidence of any negligence here.

**4.      Holland Cannot Maintain a Claim for Outrageous Conduct.**

19       The elements of outrage "are (1) extreme and outrageous conduct; (2) intentional or

20  reckless infliction of emotional distress; and (3) actual result to the plaintiff of severe emotional

21  distress."  *Rice v. Janovich*, 109 Wn.2d 48, 61 (1987).  "Liability exists 'only where the conduct

22  has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

23  of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"

24  *Grimsby v. Samson*, 85 Wn.2d 52, 59 (1975)(quoting Restatement).  Here, as recorded on the in-

25

26
_____
[73] Complaint, pp. 11-13.
[74] Complaint, p. 13, at ¶82.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

20

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1    car video, Trooper Brock lawfully detained and arrested Holland.  There is no evidence upon

2    which a reasonable fact finder could find his conduct was outrageous.  It was professional.

3        **5.      Holland Cannot Maintain a Claim against the WSP for Negligent
              Supervision or Training of Trooper Brock.**

4

5        To prove negligent supervision, a plaintiff must prove (1) the employee acted outside the

6    scope of employment; (2) the employee presented a risk of harm to others; (3) the employer knew,

7    or should have known the employee posed a risk to others; and (4) the employer's failure to

8    supervise was the proximate cause of the injuries.  *Niece v. Elmview Group Home,* 929 P.2d 420,

9    427 (Wash. 1997).  Holland has no evidence to support this claim.  Trooper Brock acted within

10   the course and scope of his employment with the WSP, and acted reasonably and lawfully.

11       To establish negligence, Holland is required to show a duty, breach, proximate

12   causation, and resulting injury.  *Hoffer v. State,* 110 Wash.2d 415,421, 755 P.2d 781 (1988),

13   *aff'd on rehearing,* 113 Wash.2d 148, 776 P.2d 963 (1989).  Holland has no evidence to support

14   a claim that Trooper Brock was negligently trained by the WSP.  He cannot show Trooper Brock

15   breached any standard of care, or that such a breach proximately caused Holland's alleged false

16   arrest.  It cannot be disputed that Trooper Brock is a highly-trained State Trooper, who has an

17   exemplary record of service (as detailed in the *Statement of Facts*).[75]

18       **6.      Holland Cannot Assert a Claim for "Exemplary Damages."**

19       There is no cause of action for "exemplary damages."  Holland has no evidence to support

20   any claim for damages, let alone "exemplary damages."[76]

21       **7.      Holland Cannot Assert a Claim for "Larceny by Trick."**

22       There is no cause of action for "larceny by trick."[77]   Holland claims Trooper Brock

23   arrested him and impounded his vehicle "simply because the plaintiff invoked his Fifth

24   Amendment rights."  The arrest and impound were lawful, as detailed earlier.

25
          [75] *See* "Statement of Facts," Section III(F) *supra.*
26        [76] Complaint, p. 21.
          [77] Complaint, p. 22.

STATE DEFENDANTS' MOTION FOR                    21              ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                       Torts Division
NO.  12-cv-0791 JLR-MAT                                          800 Fifth Avenue, Suite 2000
                                                                    Seattle, WA 98104-3188
                                                                       (206) 464-7352

1

2

### 8.   Holland Cannot Maintain a Claim for "Cruel and Unusual Punishment" From Being Handcuffed.

3

4   Handcuffs are not comfortable.  Trooper Brock went out of his way to make Holland's

5   handcuffs as comfortable as possible.[78]  This exchanged is captured on the audio recording of

6   Holland's arrest.[79]   As Holland has wide shoulders, Trooper Brock combined two sets of

7   handcuffs to make them longer in length.  Seconds after Holland complained his handcuffs

8   were tight; Trooper Brock helped Holland back out of the patrol car and adjusted them.  He

9   explained that handcuffs are oval-shaped and, because Holland was rotating his wrists causing

10   them to bind with the cuffs, he was causing himself some discomfort.   Trooper Brock

11   demonstrated he could get two fingers between the cuffs and his wrists.   Holland never

12   mentioned any handcuff discomfort again to Trooper Holland.   Holland also made no

13   complaints to the King County Jail about any discomfort, pain, or injury from being handcuffed.

14   He has no evidence of any handcuff injury, and has no claim for "cruel or unusual punishment."

### 9.   Holland Cannot Maintain a Claim for Defamation – Libel or Slander.

15   "Libel" and "slander" are both methods of defamation.  Libel is expressed in print.

16   Slander is expressed verbally.  Holland claims Trooper Brock "defamed the plaintiff by his

17   fictitious charge" of DUI.[80]   "When a defendant in a defamation action moves for summary

18   judgment, the plaintiff has the burden of establishing a prima facie case on all four elements of

19   defamation: falsity, an unprivileged communication, fault, and damages."  *LaMon v. Butler*,

20   112 Wn.2d 193, 197 (1989).  Here, none of these essential elements can be established as a

21   matter of law.  There is no evidence of defamation.  Therefore, his claims for defamation (libel

22   or slander) fail as a matter of law.

23

24

25

26

---

[78] *See* "Statement of Facts," Section III(A)(2) *supra*.
[79] Exhibit 1 (DVD) to Trooper Brock Decl., Track "**B_T16@...,**" at 1:38:40 seconds to 1:41:12 seconds. (Note that 1:38:40 is the time stamp, and refers to 1:38 a.m. at 40 seconds.)
[80] Complaint, p. 25.

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1    **I.      Qualified Immunity Bars Claims Against Trooper Brock.**

2         Qualified immunity entitles officers "not to stand trial or face the other burdens of

3    litigation" on a claim arising under § 1983, provided their conduct did not violate a clearly

4    established federal right of a plaintiff.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The

5    qualified immunity inquiry asks two questions: (1) was there a violation of a constitutional

6    right, and, if so, (2) was the right at issue "clearly established" such that "it would be clear to a

7    reasonable officer that his conduct was unlawful in the situation he confronted"?  *Saucier v.*

8    *Katz*, 533 U.S. 194, 201-02 (2001), *overruled on other grounds* by *Pearson v. Callahan*, 129

9    S.Ct. 808 (2009).[81]  If an officer could have reasonably, but mistakenly, believed his conduct

10   did not violate a clearly established constitutional right, qualified immunity is appropriate.

11   *Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th Cir. 2006).

12        For the reasons above, Holland's constitutional rights were not violated in this incident.

13   For the sake of argument, however, even if Holland had supported a viable constitutional

14   claim, Trooper Brock is nevertheless entitled to qualified immunity.  He violated no "clearly

15   established" rights and would have had no reason to know his conduct was improper.

16        Ninth Circuit precedent makes clear that qualified immunity should be denied only if

17   no reasonable officer could have believed the conduct in question was lawful.  *Estate of Ford*,

18   301 F.3d at 1045; *Sorrels v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002) (granting qualified

19   immunity where conduct was not so far-fetched that its illegality was necessarily obvious).

20   Based on the circumstances here, a reasonable officer could believe the actions of Trooper

21   Brock were lawful.  They were lawful.

22        In addition, Trooper Brock is entitled to state law qualified immunity against Holland's

23   state tort claims.  Under state law, police officers are entitled to immunity where they (1) were

24   carrying out a statutory duty, (2) were acting according to the procedures dictated by statute

25        ───────────────────

26        [81] *Pearson v. Callahan*, 129 S.Ct. 808 (2009), "reevaluated" the mandatory two-step framework in *Saucier* and held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."  *Pearson*, 129 S.Ct. at 818.

STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
NO.  12-cv-0791 JLR-MAT

23

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1   and superiors, and (3) acted reasonably. *McKinney v. City of Tukwila*, 13 P.3d 631, 631
2   (Wash. Ct. App. 2000). Here, Trooper Brock satisfied the three factors of the state qualified
3   immunity analysis. The first factor is satisfied because he was carrying out his statutory duty
4   to enforce the law. *See* RCW 10.93.070 ("A Washington peace officer…may enforce the
5   traffic or criminal laws of this state…"); *McKinney*, 13 P.3d at 640 (recognizing the general
6   statutory duty of police officers to enforce state's criminal and traffic laws). The second factor
7   is satisfied because Trooper Brock acted according to procedure dictated by statute and by his
8   superiors. On the morning of the incident, he was assigned by his superiors to work speed and
9   DUI enforcement. As authorized by Washington law, Trooper Brock stopped Holland upon a
10  reasonable suspicion he was speeding. *See State v. Duncan*, 43 P.3d 513, 516-18 (Wash. 2002)
11  (officers only need reasonable suspicion, not probable cause, to stop a vehicle to investigate
12  whether the driver committed a traffic infraction). The third factor is satisfied because Trooper
13  Brock acted reasonably, as can be heard and seen on the audio and video recording. With all
14  three factors satisfied, state qualified immunity is appropriate and bars all state claims.

### VII.   CONCLUSION

16  For these reasons, the State Defendants respectfully request summary judgment.

17  DATED this 9th day of May, 2013.

18  ROBERT M. McKenna
19  Attorney General

20  *s/ Tobin Dale*
    TOBIN DALE, WSBA No. 29595
21  Assistant Attorney General
22  800 5th Avenue, Suite 2000; Seattle, WA 98104
    Tel:  206-464-7362;  Fax:  206-587-4229
23  Email:  TobinD@atg.wa.gov
    Attorneys for Defendants WA State Patrol,
24  Anthony Brock and WA State Dept.  of Licensing

25

26

1

## CERTIFICATION OF SERVICE

2      I hereby certify that on this 9th day of May, 2013, I caused to be electronically filed the

3  foregoing document with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to:

5  Samantha Kenner:  Samantha.kanner@kingcounty.gov
   Dwight Holland:  dmanh3@comcast.net

6

7                                  /s/ Tobin Dale
                                  TOBIN DALE, WSBA No. 29595
8                                  Assistant Attorney General
                                  800 Fifth Ave., Ste. 2000; Seattle, WA 98104-3188
9                                  Tel: (206) 464-7352; Fax: (206) 587-4229
                                  E-mail:  TobinD@atg.wa.gov
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26