1

2

3

4

5

6

7

8
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10
DWIGHT HOLLAND,                          CASE NO. C12-0791JLR

11
                    Plaintiff,            ORDER REGARDING STATE
                                          DEFENDANTS' MOTION FOR
12
          v.                              SUMMARY JUDGMENT AND
                                          THE PARTIES' DISCOVERY-
13
KING COUNTY ADULT                         RELATED MOTIONS
DETENTION, et al.,
14

15
                    Defendants.

16
## I.      INTRODUCTION

17
       Before the court are three motions:  (1) Defendants Washington State Patrol

18
("WSP"), Washington State Department of Licensing ("DOL"), and Washington State

19
Patrol Trooper Anthony Brock's (collectively, "State Defendants") motion for summary

20
judgment (Mot. (Dkt. # 27)), (2) pro se Plaintiff Dwight Holland's motion to compel the

21
production of documents (Mot. to Compel (Dkt. # 35)), and (3) State Defendants' motion

22
to stay discovery pending ruling on their motion for summary judgment (Mot. for Stay

1   (Dkt. # 36)).  The court has reviewed the motions, all submissions filed in support and

2   opposition thereto, the balance of the record, and the applicable law.  Being fully advised,

3   the court GRANTS in part and DENIES in part State Defendants' motion for summary

4   judgment, GRANTS in part and DENIES in part Mr. Holland's motion to compel, and

5   DENIES as moot State Defendants' motion to stay discovery.[1]

6                    **II.     FACTUAL BACKGROUND**

7           In evaluating relevant evidence for purposes of State Defendants' motion for

8   summary judgment, the court is guided by the following principles.  The court does not

9   make credibility determinations or weigh conflicting evidence, but rather views all

10  evidence and draws all inferences in the light most favorable to the non-moving party.

11  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir.

12  1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574

13  (1986)); *see also Hrdlicka v. Reniff*, 631 F.3d 1044, 1048, 1051 (9th Cir. 2011); *Motley v.

14  Parks*, 432 F.3d 1072, 1075 n.1 (9th Cir. 2005) (en banc), *overruled on other grounds by

15  United States v. King*, 687 F.3d 1189 (9th Cir. 2012); *Miranda v. City of Cornelius*, 429

16  F.3d 858, 860 n.1 (9th Cir. 2005).  The court, however, can rely on the indisputable

17  portions of videotape submitted as evidence.  *See Scott v. Harris*, 550 U.S. 372, 380-81

18  (2007).  "When opposing parties tell two different stories, one of which is blatantly

19  contradicted by the [videotape evidence], so that no reasonable jury could believe it, a

20

21          [1] No party has requested oral argument, and the court deems all three motions to be
22  appropriate for disposition without it.

1  court should not adopt that version of the facts for purposes of ruling on a motion for

2  summary judgment." *Id.* at 380.  Rather, the court "should . . . view[] the facts in the

3  light depicted by the videotape." *Id*. at 381.  With these precepts in mind, the court sets

4  forth the factual background underlying this motion.

5       This lawsuit arises out of the arrest of Plaintiff Dwight Holland on suspicion of

6  driving while under the influence of alcohol and the subsequent revocation of his driver's

7  license for refusing to take an alcohol breath test.  Much of Mr. Holland's arrest was

8  captured by Trooper Brock's in-car video cameras.  (*See* Brock Decl. (Dkt. # 31-1) ¶ 12,

9  Ex. 1.)

10       On September 16, 2011, at approximately 1:32 a.m., Trooper Brock was parked

11  just south of the First Avenue Bridge on southbound SR-509, in Seattle, Washington.

12  (*Id.* Ex. 2 at 8.)  Mr. Holland was driving across the bridge at the time that Trooper Brock

13  was parked there.  (*Id.*; *see* Holland Aff. (Dkt. # 32-2) ¶¶ 1, 3.)[2]  Trooper Brock testifies

14  that he stopped Mr. Holland, who was driving across the bridge, because Mr. Holland

15  was speeding.  (Brock Decl. ¶ 14, Ex. 2 at 8.)  Trooper Brock reports that he obtained a

16  reading on his "assigned BEE III RADAR unit of 58mph in a posted 45mph zone" with

17  _____

18       [2] Mr. Holland asserts that he "wasn't engaged in transportation," and that he does not

19  drive or operate a motor vehicle.  (Resp. at 8.)  In addition, he asserts that Defendants "never
    proved" that he operated a motor vehicle or was in the act of driving on the night in question.

20  (*Id.*)  Mr. Holland's position is directly contradicted by the videotape evidence in which he steps
    out of a pickup truck (that Trooper Brock has just pulled over) from the driver's seat.  (*See* Brock
    Decl. Ex. 1a (Videotape Recording File No. B_716@20110916013045.mpg) at 3:00-3:04.)  No

21  party has submitted any evidence indicating that any other person was in the vehicle at the time
    Mr. Holland was pulled over.  The only reasonable conclusion that any fact finder could draw is

22  that Mr. Holland was indeed operating the truck depicted in the videotape.  For purposes of this
    factual issue, the court views the evidence in the light depicted by the videotape.

1    respect to the vehicle that Mr. Holland was driving.  (*Id.*; *see also id.* Ex. 2. at 14.)  Mr.

2    Holland denies that he was speeding.  (Resp. (Dkt. # 32) at 6 ("I was not speeding.");

3    Holland Aff. ¶ 5.)  However, this assertion is based on Mr. Holland's interpretation of

4    Washington State's statutes with respect to speeding, and not based on the fact that Mr.

5    Holland was driving within the posted speed limit.  (*See* Resp. Mem. at 3.)  Indeed, Mr.

6    Holland asserts that "speeding beyond the posted limit . . .  in itself isn't necessary [sic]

7    speeding."  (*Id.*)

8         It is undisputed that Trooper Brock did not know Mr. Holland's race or ethnicity

9    and did not know that Mr. Holland was African-American until Officer Brock was at Mr.

10   Holland's driver-side window.  (Brock Decl. ¶ 14; Resp. at 6 ("I never asserted that

11   Trooper Brock stopped me because I'm black.  It was early morning and my windows are

12   tinted and rolled up.  There is no way that Trooper Brock could have seen the color or my

13   skin . . . .").)

14        Following his initial stop by Trooper Brock, Mr. Holland rolled his driver's

15   window down approximately one-half inch or one inch.  (Brock Decl. Ex. 2 at 8 ("As I

16   contacted the vehicle, the driver rolled down the driver's window approximately ½

17   inch."); Resp. at 6 ("I've rolled down my tinted window one inch . . . .").)  Trooper Brock

18   explained that he clocked Mr. Holland going 58 mph in a 45 mph zone.  (Brock Decl. Ex

19   1a (Videotape Recording File No. B_716@20110916013045.mpg) at 1:50-1:53;[3] *id.* Ex.

20

21        [3] State Defendants have submitted a disk containing two video recording files as exhibit 1
22   to the declaration of Trooper Brock.  The video files are identified as
     B_716@20110916013045.mpg and C-716@20110916014212.mpg.  In order to distinguish

2 at 8.)  In response to Trooper Brock's request to roll the window down further, Mr.

Holland rolled the window down another half inch.  (*Id.* Ex. 2 at 8; Resp. at 6.)

Trooper Brock reports that he "smelled an obvious odor of intoxicants coming

from inside the vehicle." (Brock Decl. Ex. 2 at 8.)  He also observed that "the drivers

[sic] eyes were very red, bloodshot and droopy." (*Id.*)  Mr. Holland denies that his eyes

were red, bloodshot or droopy.  (Resp. at 6; Holland Aff. ¶ 9.)  He denies that he smelled

of alcohol or was intoxicated.  (*Id.* ¶¶ 8, 10.)  Trooper Brock asked Mr. Holland to step

out of the vehicle.  (Brock Decl. Ex. 2 at 8; *id.* Ex. 1a at 2:38-2:40 ("All right, jump out

and chat with me real quick.")[4]

Once Mr. Holland was out of the vehicle, Trooper Brock asked him how much

alcohol he had to drink that night.  (Brock Decl. Ex. 1a at 3:09.)  Mr. Holland replied that

he was "pleading the Fifth, sir." (*Id.* at 3:11.)  Trooper Brock also asked Mr. Holland if

he would do some voluntary field sobriety tests.  (*Id.* at 3:17-18.)  Mr. Holland did not

agree or disagree, but rather again stated that he was "pleading the Fifth, sir." (*Id.* at

3:19-20.)  Officer Brock repeatedly asked Mr. Holland to clarify if he was willing to

perform field sobriety tests, and Mr. Holland repeatedly responded by stating that he was

"pleading the Fifth." (*Id.* at 3:20-5:18.)  Trooper Brock states that as Mr. Holland stood

---

between the two files, the court has designated them as exhibit 1a and exhibit 1b, respectively, to
Trooper Brock's declaration.  (*See generally* Brock Decl. Ex. 1 (containing the two referenced
files).)

[4] At this point in the video recording, Trooper Brock asks Mr. Holland to step to the front
of Mr. Holland's vehicle.  (Brock Decl. Ex. 1a at 3:08-3:09.)  As a result, it is no longer possible
to view the two men on Trooper Brock's video camera, but the audio recording is still readily
discernible.

1  in front of him, Mr. Holland "had a constant sway and repeatedly reached back and used

2  the front of his truck for balance." (*Id.* Ex. 2 at 8.)  Mr. Holland denies that he swayed or

3  used the front of his truck for balance.  (Resp. at 7; *see* Holland Aff. ¶ 9.)  Mr. Holland is

4  not visible during this portion of the videotape, and thus for purposes of the State

5  Defendants' motion for summary judgment, the court views the parties' conflicting

6  testimony in this regard in the light most favorable to Mr. Holland.  Trooper Brock then

7  placed Mr. Holland under arrest for driving under the influence of intoxicating liquor.

8  (*Id.* at 5:39-47; *see also id.* Ex. 2 at 4 (Bates No. 90040003) (indicating that Mr. Holland

9  was under arrest for "[d]riving or being in actual physical control of a motor vehicle

10  while under the influence of intoxicating liquor and/or drugs" pursuant to RCW

11  46.61.502 or RCW 46.61.504).)

12      Trooper Brock placed Mr. Holland in handcuffs using a combination of two sets of

13  handcuffs to make them longer.  (Resp. at 7.)  He can then be heard on the videotape

14  placing Mr. Holland in the backseat of his patrol car.  (Brock Decl. Ex. 1a at 7:04-7:16.)

15  Shortly after Trooper Brock placed Mr. Holland in his patrol car, Mr. Holland

16  complained that the handcuffs were too tight.  (*Id.* at 7:56-8:00.)  Mr. Holland has

17  subsequently asserted that handcuffs "cut into [his] skin" and "left them swollen and

18  scarred [his] skin for several months."  (Resp. at 7.)  Trooper Brock helped Mr. Holland

19  out of the vehicle and adjusted the handcuffs.  (Brock Decl. Ex. 1a at 8:40-9:05.)  He

20  explained that the handcuffs were oval-shaped, and because Mr. Holland was rotating his

21  wrists causing them to bind with the cuffs, he was causing himself discomfort.  (*Id.* at

22  9:27-10:10.)  He also explained how Mr. Holland could hold his hands to diminish any

1    discomfort.  (*Id.*)  He also double-cuffed Mr. Holland, using two sets of handcuffs to

2    lengthen the distance between Mr. Holland's hands because Mr. Holland has large

3    shoulders.  (*Id.* at 10:12-10:20.)  Mr. Holland asserts that Trooper Brock "did not adjust

4    the cuffs," but "took [his] wrist in one hand[,] the cuff in the other[,] and violently

5    twisted [his] wrist until [his wrists] were properly seated in the oval position of the cuff."

6    (Resp. at 8.)  He also asserts that the handcuffing caused him injury (Holland Aff. ¶ 12)

7    and that he was left with a scar that lasted several months (Resp. Mem. at 12).  After his

8    initial complaint about the handcuffs, Mr. Holland did not complain about them again to

9    Trooper Brock.  (Brock Decl. ¶ 15.)  In addition, there is no indication in Mr. Holland's

10   King County Jail records that he complained about pain, discomfort, or any injuries due

11   to the handcuffs.[5]  (Dale Decl. (Dkt. # 28) ¶ 4.)

12         Trooper Brock read Mr. Holland his Miranda warnings and asked if Mr. Holland

13   understood them.  (Brock Decl. Ex. 1a at 10:45-11:04.)  Mr. Holland responded:  "No, I

14   do not and I'm not giving up my rights.  I'm reserving my rights under UCCC1-308."

15   (*Id.* at 11:05-11:16.)  Trooper Brock explained that he was not asking Mr. Holland to give

16   up his rights, but was asking him if he understood them.  (*Id.* at 11:16-11:20.)  Mr.

17   Holland responded:  "I'm reserving my rights.  I'm waiving my benefits and privileges

18   under UCC 1-308."  (*Id.* at 11:22-11:31.)

19         Mr. Holland denies that he ever stated:  "I'm reserving my rights under UCCC 1-

20   308."  (Resp. at 8.)  He asserts that such a statement "would and could be construed into

21

22       [5] In addition, Mr. Holland does not deny that he never complained about any discomfort from his handcuffs following Trooper Brock's adjustment of them.

ORDER- 7

1  slur [sic] speech." (*Id.*)  He asserts that he said:  "I'm reserving my rights under UCC 1-

2  308" and that this "can be heard clearly over the defendant's video/audio evidence." (*Id.*)

3  He also denies that he ever stated:  "I'm waiving my benefits and privileges under UCC

4  1-308." (*Id.*)  Because Mr. Holland's assertions are in direct conflict with the videotape

5  evidence, in this instance, the court views this evidence in the light depicted by the

6  videotape.

7  Trooper Brock then requested a tow truck to impound Mr. Holland's vehicle.  (*See*

8  Brock Decl. Ex. 2 at 13 (Bates Stamp 90040012); *id.* Ex. 1a at 11:58-12:30; *id.* Ex. 1b

9  (Videotape Recording No. C-716@20110916014212.mpg) at 0:32-1:03.)  After the tow

10  truck arrived, Trooper Brock transported Mr. Holland to the Tukwila Police Department.

11  (*See* Brock Decl. Ex. 1b at 13:07-13:32; 22:05-30:29.)  Trooper Brock states that, during

12  Mr. Holland's transport, the patrol car was filled with the smell of intoxicants.  (Brock

13  Decl. Ex. 2 at 8-9 (Bates Nos. 90040007-8).)  Mr. Holland, however, denies that the

14  patrol car smelled of intoxicants while he was transported to the Tukwila Police

15  Department.  (Resp. at 8.)

16  At the police station, Trooper Brock read Mr. Holland his Miranda warnings

17  again.  (Brock Decl. Ex. 2 at 8 (Bates No. 90040007).)  He also read the "Implied

18  Consent Warning for Breath" test form to Mr. Holland.  (*Id.* Ex. 2 at 4, 8 (Bates Nos.

19  90040003, 90040007).)  The form states, in part:

20      1.  YOU ARE NOW ADVISED THAT YOU HAVE THE RIGHT TO
          REFUSE THIS BREATH TEST; AND THAT IF YOU REFUSE:

21

22        (A)  YOUR DRIVER'S LICENSE, PERMIT, OR
               PRIVILEGE TO DRIVE WILL BE REVOKED OR

ORDER- 8

DENIED BY THE DEPARTMENT OF LICENSING
FOR AT LEAST ONE YEAR . . . .

(Brock Decl. Ex. 2 at 4 (Bates No. 90040003).)  In their original moving papers, State

Defendants assert that "Holland, by his signature [on the form], acknowledged that the

'Implied Consent Warning for Breath' form had either been read to or by him," and that

"[h]e wrote in his handwriting: 'I heard what you read.'"  (Mot. at 7.)  Mr. Holland

denied that he had ever signed this form or written anything on it.  (Resp. at 8.)  In their

reply memorandum, State Defendants acknowledge their error and acknowledge that Mr.

Holland was indeed handcuffed at the time.  (Reply (Dkt. # 34) at 6.)  However, Mr.

Holland does not deny that Trooper Brock read the warning to him and that he was

advised of his rights.  (*See* Resp. at 8.)  Further, Mr. Holland asserts that he "wasn't

intoxicated and . . . was very lucid, alert and oriented as to what was being done to me."

(*Id.*)

Mr. Holland responded to the reading of the "Implied Consent Warning for

Breath" form by stating that he was "pleading the Fifth."  (Resp. at 8; Brock Decl. Ex. 2

at 8-9 (Bates Nos. 90040007-8).)  Because Mr. Holland refused to expressly consent to a

breath test, Trooper Brock interpreted his response as a refusal and processed Mr.

Holland accordingly.  (*Id.* at 9 (Bates No. 90040008).)

Mr. Holland asserts that he did not refuse or consent to the take the test but rather

invoked his Fifth Amendment rights.  (Resp. at 8.)  The "conflict" between Trooper

Brock's testimony and Mr. Holland's testimony with respect to his refusal to consent to

the breath test, however, is of no import with respect to this motion because Mr.

ORDER- 9

1   Holland's failure to expressly consent to the test means that Trooper Brock had no choice

2   but to process him as having refused to take the test.

3         Mr. Holland asserts that because he would not agree to sign a document, Trooper

4   Brock became frustrated and used "a racial slur as to [his] education or there lack

5   [sic] . . . ." (*Id.*)  Trooper Brock testifies that "[a]t no point in time, in connection with

6   this incident, did [he] use any derogatory language or racial slurs." (Brock Decl. ¶ 16.)

7   For purposes of this motion, the court views the conflict in this evidence in the light most

8   favorable to Mr. Holland.

9         In a letter from DOL, dated September 11, 2011, Mr. Holland received a "Notice

10   of Revocation." (Weaver-Groseclose Decl. (Dkt. # 29) Ex. 1.)  The Notice informed him,

11   in part, that his driving privileges would be revoked for "1 year" effective November 16,

12   2011. (*Id.*)  The revocation of Mr. Holland's license is required under RCW 46.20.308

13   and RCW 46.20.3101.  The Notice advised Mr. Holland:

> 14   You can also contest this action by submitting a Driver's Hearing Request
>        form or written request along with $200 (unless you provide proof of
> 15   indigence), postmarked within 20 days from the date of your arrest.  Failure
>        to submit a complete and timely request will be considered a waiver of your
> 16   right to a hearing.  You'll find all the necessary forms on our website.

17   (Weaver-Groseclose Decl. Ex. 1.)  Mr. Holland filed a copy of this notice as an exhibit to

18   his complaint. (1st Am. Compl. (Dkt. # 7) Ex. E.)  Mr. Holland never submitted a

19   Driver's Hearing Request form or otherwise requested a hearing.  (Weaver-Groseclose

20

21

22

ORDER- 10

1  Decl. ¶ 3.)  Effective November 16, 2011, DOL revoked Mr. Holland's driving privileges

2  for one year.  (*See id.* ¶ 4.)[6]

3      On January 9, 2012, the King County District Court made a finding of probable

4  cause with respect to Mr. Holland's arrest.  Specifically, the court found:

5         After a careful review of the files and records herein including the
       statement of probable cause executed by the citing law enforcement officer

6         along with any report submitted by that officer and any accompanying
       documentation to that report. [sic]

7

8         THE COURT HEREBY FINDS THAT PROBABLE CAUSE EXISTS that
       on 09/16/2011 the crime of DUI [driving under the influence] may have
       been committed.

9

10  (Dale Decl. Ex. 2.)  Mr. Holland was charged with driving under the influence of

11  intoxicants, but that charge was dismissed prior to trial on August 3, 2012.  (*See* Resp. to

12  OSC (Dkt. # 12) at 9-10; *see also* Resp. at 9.)

13      Mr. Holland commenced this lawsuit in early May 2012.  (*See* Dkt. ## 1, 2.)  On

14  August 2012, Mr. Holland filed his first amended complaint.  (*See* 1st Am. Compl.)  Mr.

15  Holland has sued nine defendants, including the State Defendants, has asserted fifteen

16  causes of action, and seeks $2.5 million in damages.  (*See generally id.*)

17      On December 7, 2012, the court issued an order to show cause as to why this

18  matter should not be dismissed under Federal Rule of Civil Procedure 4(m).  (OSC (Dkt.

19  # 9).)  In response, Mr. Holland represented to the court that "all parties mentioned have

20  —————————————

21      [6] DOL has not yet restored Mr. Holland's driving privileges.  (Weaver-Groseclose Decl.
¶ 5.)  DOL requires a two-step process to restore driving privileges:  (1) provide DOL with

22  "financial responsibility insurance for the future," and (2) pass all required tests for driving a
vehicle in Washington State.  (*Id.*)  Mr. Holland has not done either.  (*Id.*)

been served week(s) prior to receiving this order." (Resp. to OSC (Dkt. # 12) at 2.)  In

addition, all defendants except for Gary's Towing had either appeared or answered the

complaint, and Mr. Holland had filed an affidavit of service with respect to Gary's

Towing. (*See id.* at 2.)  Accordingly, the court discharged its order to show cause with

respect to Rule 4(m). (*See* 1/2/13 Order (Dkt. # 14).)  However, the court also stated:

> [C]ertain defendants have asserted affirmative defenses concerning the
> propriety of service of process in this matter (*see, e.g.*, Answer (Dkt. # 11)
> at 26), and others have entered appearances without waiving service of
> process defenses (*see, e.g.*, Notice of Appear. (Dkt. # 13) at 1).  This
> order—discharging the court's prior order to show cause—does not address
> the propriety of any service of process performed in this proceeding.

(*Id.* at 2, n.1.)

Mr. Holland has apparently attempted to serve State Defendants by mail. (Brock

Decl. ¶ 17; Dale Decl. ¶ 3.)  Although Mr. Holland has filed some affidavits of service

with the court, he has not filed such an affidavit with respect to State Defendants.  State

Defendants raised improper service of process as an affirmative defense in their answer

to Mr. Holland's complaint (*see* State Def.'s Ans. (Dkt. # 16) at 6, ¶ 1), as well as in the

parties' Joint Status Report to the court (*see* JSR (Dkt. # 20) at 4, ¶ 15).

Mr. Holland has not filed a tort claim for damages with the State Risk

Management Division of the Office of Financial Management concerning the subject

matter of his complaint. (Blonien Decl. (Dkt. # 30) ¶ 3.)

## III.   ANALYSIS

State Defendants have moved for summary judgment with respect to a number of

issues. (*See generally* Mot.)  First, they assert that they are entitled to dismissal based on

1    improper service of process.  (Mot. at 11-13.)  Second, they assert that they are entitled to

2    dismissal of all of Mr. Holland's state law claims on substantive grounds because Mr.

3    Holland failed to comply with Washington's claim filing statute.  (*Id.* at 13-14.)  Third,

4    they assert that they are entitled to summary judgment with respect to Mr. Holland's 42

5    U.S.C. § 1983 claims on variety of bases, including Eleventh Amendment immunity for

6    DOL and WSP and qualified immunity for Officer Brock.  (*Id.* at 14-19, 23-24.)  Mr.

7    Holland has moved to compel the production of certain documents, including additional

8    video and audio clips, and has asked that the court continue State Defendants' motion for

9    summary judgment until after additional documents are produced.  (*See generally* Mot. to

10   Compel.)  In response, State Defendants have moved to stay discovery until after the

11   court rules on their motion for summary judgment.  (*See generally* Mot. for Stay.)  The

12   court considers each motion and argument in turn.

13        **A.  Standards**

14        Summary judgment is appropriate if the evidence, when viewed in the light most

15   favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

16   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

17   P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torres v. City of Madera*,

18   648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking

19   the evidence and all reasonable inferences drawn therefrom in the light most favorable to

20   the non-moving party, there are no genuine issues of material fact and the moving party is

21   entitled to judgment as a matter of law.").  The moving party bears the initial burden of

22   showing that there is no genuine issue of material fact and that he or she is entitled to

1    prevail as a matter of law.  *Celotex*, 477 U.S. at 323; *Furnace v. Sullivan*, 705 F.3d 1021,

2    1026 (9th Cir. 2013).  If the moving party meets his or her burden, the non-moving party

3    "must make a showing sufficient to establish a genuine dispute of material fact regarding

4    the existence of the essential elements of his case that he must prove at trial" in order to

5    withstand summary judgment.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

6    **B.  Service of Process**

7    Where the validity of service of process is properly contested, the burden is on the

8    plaintiff to establish the validity of service or to create an issue of fact requiring an

9    evidentiary hearing to resolve.  *See Aetna Business Credit, Inc. v. Universal Decor &*

10   *Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981); *Naufahu v. City of San Mateo*,

11   No. C07-4517MMC, 2008 WL 2323869, at *1 (N.D. Cal. May 14, 2008) (relying on

12   *Aetna Business Credit* ).  A plaintiff ordinarily meets this burden by producing the

13   process server's return of service, which is generally accepted as *prima facie* evidence

14   that service was accomplished, and of the manner in which it was accomplished.  *See,*

15   *e.g.*, *Blair v. City of Worcester*, 522 F.3d 105, 112 (1st Cir. 2008); *S.E.C. v. Internet*

16   *Solutions for Business Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (signed return of service

17   constitutes *prima facie* evidence of proper service in context of default judgment).

18   Mr. Holland has apparently attempted to serve State Defendants with the summons

19   and complaint only by mail.  (*See* Brock Decl. ¶ 17; Dale Decl. ¶ 3.)  State Defendants

20   assert that service of process by mail is improper, and they are therefore entitled to

21

22

1   dismissal of Mr. Holland's complaint.[7]  (*See* Mot. at 8, 11-13.)  However, under Federal

2   Rule of Civil Procedure 12(b)(5), which governs motions to dismiss based on insufficient

3   service of process, the court has discretion to either dismiss the action without prejudice

4   or to quash service.  *See S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th

5   Cir. 2006) ("[E]ven if service were insufficient . . . the district court has discretion to

6   dismiss an action or to quash service.") (citing *Stevens v. Security Pac. Nat'l Bank*, 538

7   F.2d 1387, 1389 (9th Cir. 1976) ("The choice between dismissal and quashing service of

8   process is in the district court's discretion.")); *see also* Charles Alan Wright & Arthur R.

9   Miller, 5B Fed. Prac. & Proc. Civ. § 1354 (3d ed. 2009).   If effective service can be

10  made and there has been no prejudice to the defendant, the court will generally quash

11  service rather than dismiss the action.  *See Umbenhauer v. Woog*, 969 F.2d 25, 30-31 (3d

12  Cir. 1992).

13      To determine whether service of process is proper, courts look to the requirements

14  of Federal Rule of Civil Procedure 4.  Rule 4 contains detailed provisions on the manner

15  in which service should occur.  Fed. R. Civ. P. 4(e)(2), 4(j)(2)(A).  A plaintiff may also

16  utilize the service of process rules that apply in the state in which the federal district court

17  is located.  Fed. R. Civ. P. 4(e)(1), 4(j)(2)(B).  Therefore, service of process will be

18  upheld if it conforms to either federal or Washington State's service of process rules.  A

19  plaintiff, however, must serve all defendants with a copy of the summons and complaint

20

21      [7] Federal courts cannot exercise personal jurisdiction over a defendant without proper
22  service of process.  *Omni Capital Int'l, Ltd. v. Wolff & Co.*, 484 U.S. 97, 104 (1987); *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

1   within 120 days of filing a complaint or any court extensions upon a showing of good

2   cause.  Fed. R. Civ. P. 4(m).

3       Under both federal and Washington State rules, an individual—such as Trooper

4   Brock—may be served by (1) delivering a copy of the summons and complaint to the

5   individual personally, (2) leaving a copy of each at the individual's dwelling or usual

6   place of abode with someone of suitable age and discretion who resides there, or (3)

7   delivering a copy of each to an authorized agent designated to receive service process.

8   Fed. R. Civ. P. 4(e)(2); RCW 4.28.080(15).  Under federal law, service upon a state or

9   other state-created governmental organization, such as WSP or DOL, may be

10  accomplished by delivering a copy of the summons and complaint to the organization's

11  chief executive officer.  Fed. R. Civ. P. 4(j)(2(A).  Under Washington State law, the

12  Office of the Attorney General is charged with defending "all actions or proceedings

13  against any state officer or employee acting in his or her official capacity."  RCW

14  43.10.030(3).  Under RCW 4.92.020, serving the State in a civil action must be

15  accomplished by service on the Attorney General or by leaving the summons and

16  complaint in the Office of the Attorney General with an assistant attorney general.  *See*

17  *Landreville v. Shoreline Cmty. Coll. Dist. No. 7*, 766 P.2d 1107, 1108 (Wash. Ct. App.

18  1989).

19      Mr. Holland's attempt to serve the State Defendants via mail does not comport

20  with any of the aforementioned methods of service.  Mr. Holland, nevertheless, asserts

21  that the State Defendants' argument concerning ineffective service of process is now

22  moot because the court discharged its earlier order to show cause for failure to serve

1  Defendants with a summons and complaint within the 120-day timeframe provided in

2  Rule 4(m).  (*See* Resp. at 9; Resp. Mem. (Dkt. # 32-1) at 8.)  The court's earlier order to

3  show cause related to the 120-day timeframe set forth in Rule 4(m).  (*See generally*

4  OSC.)  The court discharged its order to show cause following Mr. Holland's statement

5  that "all parties mentioned have been served week(s) prior to receiving this order."  (Resp

6  to OSC at 2.)  The court, however, expressly noted that several defendants had either

7  filed a notice of appearance without waiving service of process defenses or had raised

8  defective service of process as an affirmative defense in their answers.  (*See* 1/2/13 Order

9  at 2 n.1.)  As a result, the court explicitly stated that its order discharging the order to

10  show cause "does not address the propriety of any service of process performed in this

11  proceeding."  (*Id.*)  Nevertheless, the court's discharge of its order to show cause

12  apparently caused Mr. Holland to believe that the court had resolved all issues concerning

13  service of process in his favor.  (*See* Resp. at 9.)  This is not the case.

14      The Ninth Circuit Court of Appeals has recognized that defective service of

15  process by a pro se plaintiff does not necessarily warrant dismissal under Rule 12(b)(5).

16  "This court recognizes that it has a duty to ensure that pro se litigants do not lose their

17  right to a hearing on the merits of their claim due to ignorance of technical procedural

18  requirements."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (citing *Borzeka v.*

19  *Heckler*, 739 F.2d 444, 447 n.2 (9th Cir. 1984) (defective service of complaint by pro se

20  litigant did not warrant dismissal)).  State Defendants have not demonstrated, or even

21  argued, that there has been any prejudice to them as result of Mr. Holland's improper

22

1    service of process.  They received the complaint and were able to move to dismiss on

2    summary judgment after reviewing it.

3           In addition, due to Mr. Holland's pro se status and his apparent confusion

4    concerning the court's discharge of its earlier order to show cause, the court concludes

5    that Mr. Holland has demonstrated good cause for an extension of time to accomplish

6    proper service under Rule 4(m).  *See Issaquah Sch. Dist. No. 411*, 470 F.3d at 1293 (If

7    service of process is found to be insufficient, the district court has discretion to allow an

8    extension of time to effect service under Rule 4(m).)  However, as discussed below,

9    although some of Mr. Holland's claims remain with respect to Trooper Brock, the court

10   dismisses all of Mr. Holland's claims against Defendants DOL and WSP on other

11   grounds.  (*See infra* §§ III.C., III.D1.)  Accordingly, the court will grant Mr. Holland an

12   additional 30 days from the date of this order to accomplish proper service of process

13   upon Trooper Brock alone and to file proof of service with the court.  If Mr. Holland fails

14   to file proof of proper service upon Trooper Brock within this period of time, Mr.

15   Holland's remaining claims against Trooper Brock will be subject to dismissal without

16   prejudice pursuant to Rule 4(m).

17   **C.  State Law Claims**

18          State Defendants assert that all of Mr. Holland's state law claims against them

19   must be dismissed because Mr. Holland failed to comply with Washington's claim filing

20   statute, RCW 4.92.100.  (Mot. at 13-14.)  RCW 4.92.100 requires that claims for

21   damages arising from the tortious conduct of state employees be submitted to the State of

22   Washington, Office of Risk Management.  The failure to file a claim with the state prior

ORDER- 18

1   to filing suit results in dismissal of the lawsuit.  *Kleyer v. Harborview Med. Ctr.*, 887

2   P.2d 468, 470-71 (Wash. Ct. App. 1995); *Malone v. Huguenin*, No. 3:11-cv-05643-RBL,

3   2012 WL 3877731, at *3 (W.D. Wash. Sept. 6, 2012) ("[Plaintiff's] state law claims must

4   be dismissed.  [Plaintiff] fails to meet a condition precedent:  he failed to file a tort claim

5   with the State prior to filing this complaint, as required by RCW 4.92.100.").

6   Compliance with the statutory notice procedures is jurisdictional.  *Levy v. State*, 957 P.2d

7   1272, 1276-77 (Wash. 1998) (failure of claimant to verify claim form as required by

8   RCW 4.92.100 deprived court of jurisdiction).

9          Mr. Holland does not contend that he filed a tort claim with the Office of Risk

10  Management.  Rather, he argues that a claim for damages is not a prerequisite to filing a

11  42 U.S.C. §1983 claim against the State.  State Defendants concede that Mr. Holland is

12  correct with respect to his § 1983 claim.  (Reply (Dkt. # 34) at 3.)  As to any asserted

13  state tort claims, however, Mr. Holland's failure to file a claim for damages with the State

14  pursuant to RCW 42.92.100 requires the court to dismiss those claims.[8]

15  **D.  Section 1983 Claims**

16         Mr. Holland alleges various violations of his constitutional rights by State

17  Defendants for unlawful arrest, unlawful imprisonment, unlawful search and seizure, and

18

19

20  _____

21         [8] Because the court dismisses Mr. Holland's state law claims on this ground, it need not
    reach State Defendants' motion for summary judgment with respect to these claims on grounds

22  that there is no evidence to support them.  (*See* Mot. at 19-22.)

1   use of excessive force.[9]  (*See, e.g.*, Compl. ¶¶ 40-67, 150-153.)  He seeks to recover for

2   these violations under 42 U.S.C. § 1983.  State Defendants have moved to dismiss these

3   claims on summary judgment.  (Mot. at 14-19, 23-24.)

4          **1.   WSP, DOL, and Trooper Brock (Acting in His Official Capactiy) Are
              Immune from Mr. Holland's § 1983 Claim under the Eleventh**
5             **Amendment and Are Not Persons within the Meaning of § 1983**

6          Mr. Holland names both DOL and WSP as defendants.  These state entities,

7   however, are not "persons" for purposes of liability under 42 U.S.C. § 1983.  *See Will v.*

8   *Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Maldonado v. Harris*, 370 F.3d 945,

9   951 (9th Cir. 2004) (holding that neither a state agency nor state official sued in their

10  official capacity are "persons" for purposes of 42 U.S.C. § 1983).  Further, the Eleventh

11  Amendment bars suits against a state unless the state has specifically waived immunity.[10]

12  *See Will*, 491 U.S. at 66.  Moreover, a suit against state officials, in their official capacity,

13  is no different than a suit against the state itself and therefore is also subject to Eleventh

14  Amendment immunity.  *See Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985)

15  (observing that "official-capacity" suits are equivalent to suits against the entity itself and

16  raise an eleventh amendment issue if the entity is a state); *see also Will,* 491 U.S. at 71

17  (citing *Graham*, the Court held "that neither a [s]tate nor its officials acting in their

18  ─────────────────

19          [9] Indeed, Mr. Holland has alleged Constitutional violations by "all defendants."  (Compl.
    ¶ 44.)

20          [10] In certain narrow circumstances not applicable here, Congress can also abrogate a
21  state's Eleventh Amendment immunity.  *See Micomonaco v. State of Wash.*, 45 F.3d 316, 319
    (9th Cir. 1995) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985); *Welch v.*
22  *Texas Dept. of Highways & Pub. Transp.*, 483 U.S. 468, 473-74 (1987)).

1   official capacity are 'persons' under § 1983").  Thus, unless the state unequivocally

2   waives sovereign immunity or Congress exercises its power under section five of the

3   fourteenth amendment to override the immunity, the state, its agencies, and its officials—

4   acting in their official capacity—are immune from suit under the Eleventh Amendment.

5   *See id*; *Pennhurst*, 465 U.S. at 104.  Neither Washington State, nor its agencies, DOL or

6   WSP, have waived their immunity.  *See Clallam Cnty. v. Dep't of Transp., State of*

7   *Wash.*, 849 F.2d 424, 427 (9th Cir. 1988) ("Neither the State [of Washington] nor the

8   agency [has] waived the eleventh amendment immunity."); *Draper v. Coombs*, 792 F.2d

9   915, 918 (9th Cir. 1986).  Accordingly, the court dismisses on summary judgment Mr.

10   Holland's 42 U.S.C. § 1983 claims against DOL, WSP, and Trooper Brock to the extent

11   Trooper Brock was acting in his official capacity.[11]

12        A state official, however, may be personally liable for damages if he or she is

13   found to have violated an individual's federal constitutional or statutory rights.  *See*

14   *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974); *Demery v. Kupperman*, 735 F.2d 1139,

---

16      [11] An exception to Eleventh Amendment immunity exists for suits against state officials in their official capacity seeking prospective injunctive relief.  *See Doe v. Lawrence Livermore*

17   *Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (citing *Will*, 491 U.S. at 70).  Mr. Holland, however, has not sought prospective injunctive relief against State Defendants.  He asks for the

18   court to enter an order reinstating his license (*see* Compl. ¶¶ 44(d), 55(d), 61(d), 67(d), 76(d), 83(d), 88(d), 101(d), 115(d), 126(d), 149(d), 153(d), 157(d), 162(d)), but his license was revoked

19   for only one year, which expired on November 16, 2012 (*see* Compl. Ex. F ("On 11/16/2011 at 12:01 a.m. we will revoke your driving privilege for 1 year . . . ."); Weaver-Groseclose Decl. ¶

20   5).  Mr. Holland's license has not yet been reinstated because he has not filed proof of financial responsibility as required under RCW 46.29.450 and has not yet passed all required tests for

21   driving a vehicle.  (*See* Weaver-Groseclose Decl. ¶ 5.)  He also asks the court to enjoin the criminal case against him.  (*See* Compl. ¶ 124(c).)  The criminal charge against Mr. Holland,

22   however, has already been dismissed.  (Resp. at 9.)  Thus, any request for prospective injunctive relief is moot.

1    1146 (9th Cir. 1984).  In addition to suing Trooper Brock in his official capacity, Mr.

2    Holland asserts that he is suing Trooper Brock in his individual capacity.  (Resp. Mem. at

3    9.)  The Supreme Court has ruled that a plaintiff can establish personal liability in a 42

4    U.S.C. § 1983 action simply by showing that the official acted under color of state law in

5    deprivation of a federal right.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  The Ninth Circuit

6    has also presumed that officials are necessarily sued in their personal capacities where

7    those officials are named in a complaint, even if the complaint does not explicitly

8    mention the capacity in which they are sued.  *See Romano v. Bible*, 169 F.3d 1182, 1186

9    (9th Cir. 1999) (citing *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278,

10   1284 (9th Cir. 1994)); *see also Coaxum v. State of Washington*, No. C10-1815-MAT,

11   2012 WL 1034231 at *6 n.5 (W.D. Wash. Mar. 26, 2012) ("Because plaintiff seeks

12   damages, there is a strong presumption she intends a personal capacity suit against the

13   individual defendants [who are state employees].").  Therefore, Mr. Holland's 42 U.S.C.

14   § 1983 claim against Trooper Brock in his personal capacity survives these grounds for

15   dismissal.

16                  **2.  Qualified Immunity for Officer Brock**

17           Section 1983 of Title 42 of the United States Code creates a cause of action

18   against any person who, acting under color of state law, violates the constitutional rights

19   of another person.  42 U.S.C. § 1983; *Mabe v. San Bernardino Cnty., Dep't of Public*

20   *Soc. Serv.*, 237 F.3d 1101, 1106 (9th Cir. 2001).  Thus, to succeed on his section 1983

21   claim, Mr. Holland must show that (1) the conduct complained of was committed by a

22   person acting under color of state law; and (2) the conduct deprived him of a

1  constitutional right. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). A public

2  official may be immune from liability for acts performed in her official capacity under

3  either the doctrine of absolute immunity or qualified immunity. *Mabe*, 237 F.3d at 1106.

4  Generally, the "presumption is that qualified rather than absolute immunity is sufficient

5  to protect government officials in the exercise of their duties." *Antoine v. Byers &*

6  *Anderson, Inc*., 508 U.S. 409, 433 n.4 (1993).

7        The Supreme Court has established a two-pronged analysis for resolving qualified

8  immunity claims. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). First, taken in the light

9  most favorable to the party asserting the injury, do the facts alleged show that a

10  constitutional right was violated. *Id*. at 201. Second, if so, was the right clearly

11  established at the time of the defendant's alleged misconduct. *Id*. at 200. The dispositive

12  inquiry in deciding whether the right was clearly established, is whether it would be clear

13  to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id*. at

14  202; *see also Pearson v. Callahan*, 555 U.S. 223, 244 (2009) ("The principles of

15  qualified immunity shield an officer from personal liability when an officer reasonably

16  believes that his or her conduct complies with the law."). The Supreme Court has also

17  clarified that courts need not first determine whether facts alleged or shown by plaintiff

18  make out violation of a constitutional right. *Pearson*, 555 U.S. at 236. Rather, courts

19  may exercise discretion in deciding which of the two prongs should be addressed first in

20  light of the circumstances of the particular case at hand. *Id.*

21        In determining immunity, the court must accept the plaintiff's allegations as true.

22  *Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993). The official seeking immunity bears

1  the burden of demonstrating that immunity attaches.  *Burns v. Reed*, 500 U.S. 478, 486

2  (1991).

3        **a.  The Traffic Stop**

4        Mr. Holland alleges that the initial stop of his vehicle by Trooper Brock on

5  suspicion of speeding violated his constitutional rights.  (*See* Compl. ¶ 42 ("Plaintiff's

6  unlawful stop, detention . . . were done without probable cause, without proper

7  jurisdiction and justification."); Resp. Mem. 3-4 ("Trooper Brock . . . lacked reasonable

8  suspicion.").)  Section 1983 of Title 42 of the United States Code requires Mr. Holland to

9  prove "(1) that a person acting under color of state law (2) committed an act that deprived

10  the claimant of some right, privilege or immunity protected by the Constitution or laws of

11  the United States."  *Browne v. San Francisco Sheriff's Dep't*, 616 F. Supp. 2d 975, 982

12  (N.D. Cal. 2009) (citing *White v. Roper*, 901 F.2d 1501, 1503 (9th Cir. 1990)).

13        The Fourth Amendment to the United States Constitution prohibits unreasonable

14  seizures.  The reasonableness of a particular seizure requires balancing of the nature and

15  quality of the seizure against the governmental interest at stake.  *See, e.g.*, *Liberal v.

16  Estrada*, 632 F.3d 1064, 1079 (9th Cir. 2011).  Traffic stops are investigatory stops that

17  must be based on reasonable suspicion that a traffic law violation occurred.  *Id.* at 1077;

18  *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005).  Reasonable suspicion to make

19  a traffic stop exists only where the officer has "'specific, articulable facts which, together

20  with objective and reasonable inferences, form the basis for suspecting that the particular

21  person detained is engaged in criminal activity.'"  *Liberal*, 632 F.3d at 1077 (citation

22  omitted); *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th

1    Cir. 1996).  A "gloss on this rule prohibits reasonable suspicion from being based on

2    broad profiles which cast suspicion on entire categories of people without any

3    individualized suspicion of the particular person to be stopped." *United States v.*

4    *Rodriguez–Sanchez*, 23 F.3d 1488, 1492 (9th Cir. 1994), *overruled in part on other*

5    *grounds by United States v. Montero-Camargo*, 208 F.3d 1122, 1131-32 (9th Cir. 2000)

6    (en banc); *see also Whren v. United States*, 517 U.S. 806, 813 (1996) ("[T]he

7    Constitution prohibits selective enforcement of the law based on considerations of

8    race.").

9        Here, Trooper Brock had reasonable, articulable suspicion to stop Mr. Holland on

10    an investigatory traffic stop for speeding based on his observations and the reading of his

11    Radar registering Mr. Holland's vehicle at a speed of 58 mph in a zone marked for 45

12    mph.  Mr. Holland has not challenged the results or readings of Trooper Brock's Radar.

13    Although Mr. Holland asserts that he was not speeding (Resp. at 6), this statement is

14    based on his own convoluted and inaccurate interpretation of Washington's statutes with

15    respect to speeding.  (*See* Resp. Mem. at 3.)  Mr. Holland asserts that "speeding beyond

16    the posted limit the [sic] in itself isn't necessary [sic] speeding."  (*Id.*)  Contrary to Mr.

17    Holland's assertions, RCW 4.61.400(2) provides that "no person shall drive a vehicle on

18    a highway at a speed in excess of [the applicable] maximum limits."  RCW 4.61.400(2).

19    The Fourth Amendment permits an officer to conduct a traffic stop "if there is reasonable

20    suspicion to conclude that a traffic violation occurred."  *Willis*, 431 F.3d at 714-15; *see*

21    *also United States v. Guerrero*, No. 2:10-cr-00009 FCD, 2011 WL 997222, at *4 n.11

22    (E.D. Cal. Mar. 17, 2011) (finding that officer's visual observations combined with

1   reading from radar was sufficient reasonable suspicion or probable cause that speeding

2   violation had occurred); *United States v. Cardenas*, No CR-00-1093-PHX-ROS, 2001

3   WL 687479, at *3 (D. Ariz. June 7, 2001) ("Probable cause exists to stop a vehicle for a

4   speeding violation if the vehicle is exceeding the posted limit.").

5          Even if Officer Brock was mistaken as to Mr. Holland's speed, his method of

6   determining Mr. Holland's speed was reasonable and unchallenged, and he was

7   reasonable with respect to his actions in making the investigatory stop of Mr. Holland's

8   car.  A mistaken factual premise can furnish grounds for an investigatory stop, if the

9   officer does not know that it is mistaken and is reasonable in acting upon it.  *United*

10  *States v. Garcia-Acuna*, 175 F.3d 1143, 1147 (9th Cir. 1999); *see also United States v.*

11  *Nunez*, No. 1:10-CR-127, 2011 WL 2357832, at *3 (D. Utah June 9, 2011) ("The fact

12  that [Defendant declares] that he [was not speeding] is irrelevant since [the officer] had

13  reasonable suspicion that [he] was speeding.").

14         Finally, there is no disputed issue of fact that Trooper Brock did not and could not

15  have known Mr. Holland's race at the time he stopped Mr. Holland on suspicion of

16  speeding.  Trooper Brock testifies that he "was not even aware of [Mr.] Holland's race"

17  until he "was at the driver's side window."  (Brock Decl. ¶ 15.)  Mr. Holland

18  acknowledges that at the time Trooper Brock pulled him over it was early in the morning

19  and the windows on his car were "tinted and rolled up."  (Resp. at 3.)  He admits that

20  "[t]here was no way that Trooper Brock could have seen the color of [his] skin . . . .," and

21  acknowledges that he is not claiming that Trooper Brock initially stopped him due to his

22  race.  (*Id.*)  Taken in the light most favorable to Mr. Holland, the facts do not demonstrate

1 that Mr. Holland's constitutional rights were violated with respect to Trooper Brock's

2 initial investigatory stop of his vehicle. Accordingly, the court grants State Defendants'

3 motion for summary judgment with respect to Mr. Holland's § 1983 claim based Trooper

4 Brock's initial stop of Mr. Holland's vehicle on suspicion of speeding.

5 **b. The Arrest**

6 State Defendants also move for summary judgment with respect to Mr. Holland's

7 claim that his arrest on suspicion of driving while intoxicated violated his constitutional

8 rights. (*See* Mot. at 16-18, 23-24.) Mr. Holland opposes the motion asserting that he had

9 not been drinking and that he exhibited no indicia of intoxication that would have

10 warranted further detention by Officer Brock. (*See* Resp. at 6-7; Resp. Mem. at 4-5.)

11 The scope of an officer's stop must be tailored to the underlying justification for

12 that stop. *United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001),

13 *amended by* 279 F.3d 1062 (9th Cir. 2002). Thus, the stop must last no longer than

14 necessary to effectuate its purposes. *United States v. Mondello*, 927 F.2d 1463, 1471 (9th

15 Cir. 1991). Questions prolonging the detention must be "reasonably related in scope to

16 the justification of [the] initiation," unless additional suspicious factors supported by

17 reasonable suspicion justify a broadening of that scope. *Muehler v. Mena*, 544 U.S. 93,

18 100-01 (2005). Nevertheless, questioning outside the scope of the initial purpose of the

19 stop does not constitute a seizure unless it unreasonably prolongs the detention. *Id.*

20 "Courts have generally held that the intrusion on the driver's liberty resulting from

21 a field sobriety test is minor, and the officer therefore need only have reasonable

22 suspicion that the driver is under the influence of alcohol in order to conduct a field

ORDER- 27

1   sobriety test." *Thompsen v. Breshears*, No. CV-08-230-RHW, 2009 WL 25815556, at *6

2   (E.D. Wash. Aug. 14, 2009) (citing *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th

3   Cir. 2008); *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir.2 007); *Rogala v. Dist. of*

4   *Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998)).  Under the reasonable suspicion standard, a

5   police officer "must have a particularized and objective basis for suspecting the particular

6   person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18

7   (1981).  A reasonable suspicion analysis is based upon the "totality of the

8   circumstances," and "officers [may] draw on their own experience and specialized

9   training to make inferences from and deductions about the cumulative information

10  available to them that might well elude an untrained person." *United States v. Arvizu*,

11  534 U.S. 266, 273 (2002) (citations and internal quotation marks omitted).  "Although an

12  officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of

13  criminal activity need not rise to the level required for probable cause, and it falls

14  considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274.

15          After he was stopped, there is no dispute that Mr. Holland only rolled his window

16  down at most a couple of inches while speaking with Trooper Brock from inside his car.

17  In and of itself, this action is not indicative of criminal activity.  *See Fuller v. City of*

18  *McMinnville*, No. 3:10-CV-1420-BR, 2012 WL 2992906, at *7 (D. Or. July 20, 2012)

19  (quoting from Oregon Court of Appeals decision holding that driver declining to roll

20  window down no more than 4 inches was a "neutral" fact in that it neither validated nor

21  refuted the officer's belief that the driver was intoxicated).

22

ORDER- 28

1    Officer Brock, however, also reports that he smelled intoxicants emanating from

2    inside the car, and that Mr. Holland's eyes were very red, bloodshot, and droopy.  (Brock

3    Decl. Ex. 2 at 8.)  Mr. Holland, however, denies each of these facts.  (*See* Resp. at 6,

4    Holland Aff. ¶¶ 8-10.)  Officer Brock asked Mr. Holland to step out of the car[12] and then

5    asked him how much alcohol he had consumed.  Mr. Brock replied that he was "pleading

6    the Fifth, sir."  Officer Brock testified that he observed Mr. Holland sway and repeatedly

7    reach back to steady himself on his truck.  (Brock Decl. Ex. 2 at 8.)  Mr. Holland denies

8    that he swayed or used the front of his truck for balance.  (Resp. at 7; *see* Holland Aff.

9    ¶ 9.)  None of these actions are visible on the videotape, so the court must view the

10   evidence in the light most favorable to Mr. Holland.  Officer Brock then asked Mr.

11   Holland if he would do some field sobriety tests, and Mr. Holland repeatedly stated that

12   he was "pleading the Fifth, sir" in response.  Following Mr. Holland's repeated

13   invocation of the Fifth Amendment and failure to consent to the conduct of field sobriety

14   tests, Officer Brock arrested him on suspicion of driving under the influence of alcohol.

15       If the court were to assume the truth of Officer Brock's version of events—that he

16   was confronted with a driver who had been speeding, who smelled of alcohol, whose

17   eyes were bloodshot and blurry, who swayed and had to support himself with a hand on

18   his vehicle—Officer Brock would have had reasonable suspicion to conduct field

19   sobriety tests.  Further, all of these factors combined with Mr. Holland's failure to

20

21   [12] Recognizing the risk confronting a police officer as he or she approaches a person
     seated in a vehicle, the Supreme Court has held that officers may routinely require persons
22   lawfully stopped for a traffic violation to exit their vehicles.  *Pennsylvania v. Mimms*, 434 U.S.
     106, 109-11 (1977) (per curiam).

1    consent to the field sobriety tests would constitute probable cause to arrest Mr. Holland

2    on suspicion of driving while intoxicated.  *See Wilder v. Turner*, 490 F.3d 810, 815 (10th

3    Cir. 2007) (holding that officer, who observed several indicators of excessive alcohol

4    consumption, had probable cause to arrest driver); *see also Miller v. Harget*, 458 F.3d

5    1251, 1260 (11th Cir. 2006) (holding that motorist's refusal to take a breathalyzer test,

6    coupled with the smell of alcohol from the vehicle, gave the officer probable cause to

7    arrest motorist).[13]  The court, however, on summary judgment, may not view the

8    evidence in this manner.  Rather, the court must view the evidence in the light most

9    favorable to Mr. Holland.  Here, according to Mr. Holland's testimony—he had not been

10   drinking, his eyes were not bloodshot or droopy, he did not sway, he did not need to

11   support himself with a hand on his vehicle, and there was no smell of alcohol.  Given

12   these facts, which the court must credit on summary judgment, a reasonable jury could

13   conclude that Officer Brock had no basis to form a reasonable suspicion that Mr. Holland

14   was under the influence of an intoxicant, which in turn would render Officer Brock's

15   further detention of Mr. Holland for purposes of administering field sobriety tests and

16   arresting him on suspicion of driving while intoxicated in violation of Mr. Holland's

17   Fourth Amendment rights.  Accordingly, the court DENIES State Defendants' motion for

18

19        [13] State Defendants also point to the "Finding of Probable Cause" on January 9, 2012, by
     the King County District Court to support their assertion that Trooper Brock had probable cause
20   to arrest Mr. Holland on suspicion of driving while intoxicated.  (*See* Mot. at 8; Dale Decl. Ex.
     2.)  Although there may be circumstances where "a probable cause finding necessarily entails a
     rejection of challenges raised to the veracity of the arresting officer, *see Wige v. City of L.A.*, 713
21   F.3d 1183, 1187 (9th Cir. 2013) (citing *Guenther v. Holgreen*, 738 F.2d 879, 884 (7th Cir.
     1984)), State Defendants have not argued issue preclusion with respect to the King County
22   District Court's findings, and accordingly, this court declines to consider this issue.

1   summary judgment with respect to Trooper Brock's defense of qualified immunity to

2   detain Mr. Holland for purposes of administering field sobriety tests and his subsequent

3   arrest on suspicion of driving while intoxicated.  There are questions of fact with respect

4   to Officer Brock's defense of qualified immunity that the court must reserve for the

5   jury.[14]

6           **c.  The Handcuffing**

7           Mr. Holland also alleges a claim for "cruel and unusual punishment" based on

8   Officer Brock's application of handcuffs following Mr. Holland's arrest.  (*See* Compl. ¶¶

9   150-53.)  State Defendants characterize this claim as a state law claim (*see* Mot. at 22),

10  but (liberally construing Mr. Holland's complaint due his pro se status) the court views

11  his allegations as a claim for violation of a federal constitutional right, but under the

12  Fourth rather than the Eighth Amendment.  The Eighth Amendment prohibits "cruel and

13

---

14          [14] State Defendants also assert that Mr. Holland has no claim under the Fourteenth

15  Amendment.  (Mot. at 18.)  Although State Defendants are arguing that Mr. Holland has no
    Fourteenth Amendment claim based on a violation of his Fourth Amendment rights, Mr. Holland

16  may have another claim under the equal protection clause of the Fourteen Amendment that the
    parties have not yet addressed on summary judgment.  Mr. Holland has alleged that Officer

17  Brock used a racial slur against him while Mr. Holland was being processed following his arrest.
    (Resp. at 8 (In Trooper Brock [sic] frustration he did issue a racial slur as to my education or

18  there [sic] lack to the effect if I graduated from high school of [sic] when I refused to signed [sic]
    the Implied Consent warning for Breath.");  Compl. ¶ 18 ("The officer made matters worse by

19  issuing racial insults to the plaintiff trying to get the plaintiff to sign document.").)  Officer
    Brock has denied that he used any racial slurs in dealing with Mr. Holland.  (Brock Decl. ¶ 16.)

20  The disparity between Mr. Holland's testimony and Trooper Brock's testimony with respect to
    the use of a racial slur creates an issue of fact that is within the province of the jury.  The Ninth

21  Circuit has held that "overt acts coupled with racial remarks are sufficient to state a claim under
    42 U.S.C. §§ 1985(2) and (3)."  *See Evans v. McKay*, 869 F.2d 1341, 1345 (9th Cir. 1989) (citing
    *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987)).  Neither party has specifically

22  addressed this issue, however, and the court will reserve ruling until such time, if any, as the
    issue is properly raised and briefed, if appropriate.

1   unusual punishment" against persons convicted of a crime.  *See generally* Amendment

2   VIII; *see also Graham v. Conner*, 490 U.S. 386, 393 n. 6 (1989) (citing *Ingraham v.*

3   *Wright*, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only

4   after the State has complied with the constitutional guarantees traditionally associated

5   with criminal prosecutions")).  Mr. Holland asserts that he was subjected to pain as a

6   result of handcuffing during his arrest, but this does not implicate the rights guaranteed

7   under the Eighth Amendment because he was never convicted.  The United States

8   Supreme Court has found that "[w]here the excessive force claim arises in the context of

9   an arrest or investigatory stop of a free citizen, it is most properly characterized as one

10  invoking the protections of the Fourth Amendment."  *Graham*, 490 U.S. at 394.  The

11  Supreme Court held that all claims that law enforcement officers have used excessive

12  force in the course of an arrest, investigatory detention, or other seizure of a free citizen

13  should be analyzed under the Fourth Amendment.  *Id.* at 395.

14       Accordingly, the court analyzes Mr. Holland's claim for excessive force under the

15  Fourth Amendment's "objective reasonableness" standard.  *See Graham v. Connor*, 490

16  U.S. 386, 388 (1989); *see also Meuhler v. Mena*, 544 U.S. 93, 103 (2005) (Kennedy, J.

17  concurring) ("The use of handcuffs is the use of force, and such force must be objectively

18  reasonable under the circumstances.").  This standard requires an evaluation of the

19  officer's conduct from the perspective of a reasonable officer on the scene.  *Graham*, 490

20  U.S. at 396-97.  Liberally construing Mr. Holland's pro se complaint, the court concludes

21  that there are two aspects to his claim for excessive force based on handcuffing:   (1) the

22

1  fact that he was handcuffed at all, and (2) his assertion that Officer Brock applied the

2  handcuffs too tightly.  The court will address each in turn.

3       First, if Mr. Holland's arrest on suspicion of driving while intoxicated was without

4  probable cause (which this court has held raises factual issues properly reserved for the

5  trier of fact), then Mr. Holland may have a claim for excessive force based simply on the

6  fact that he was handcuffed at all because handcuffing a citizen under such circumstances

7  might not be objectively reasonable.  *See Muehler*, 544 U.S. at 98 (stating that imposition

8  of correctly applied handcuffs "was undoubtedly a separate intrusion in addition to

9  detention").  If, however, the trier of fact were to find that Mr. Holland's arrest was

10  constitutionally appropriate, then it is unlikely that he would have a claim based solely on

11  the fact that Officer Brock utilized handcuffs.  Courts have found that it is objectively

12  reasonable for an officer to handcuff someone suspected of driving while intoxicated

13  pursuant to a lawful arrest to prevent possible injury either to the suspect or the officers.

14  *See Palacios v. City of Oakland*, 970 F. Supp. 732, 741 (N.D. Cal. 1997) (ruling that it

15  was objectively reasonable for officers to handcuff individual who was suspected of

16  public intoxication pursuant to lawful arrest to prevent injury).  Indeed, "courts have

17  recognized that the use of handcuffs in effecting an arrest is 'standard practice.'"  *Shaw v.

18  City of Redondo Beach*, No. CV 05-0481 SVW (FMOx), 2005 WL 6117549, at *7 (C.D.

19  Cal. Aug. 23, 2005) (internal quotation marks omitted); *see also LaLonde v. Cnty. of

20  Riverside*, 204 F.3d 947, 964 (9th Cir. 2000) ("Handcuffing an arrestee is standard

21  practice, everywhere.") (Trott, J., concurring in part, dissenting in part); *Davenport v.

22  Rodriguez*, 147 F. Supp. 2d 630, 637 (S.D. Tex. 2001) ("Merely being handcuffed and

1   taken to the police station . . . is not excessive force, but standard police practice.").

2   Thus, whether Mr. Holland has a claim for excessive force based on the application of

3   handcuffs is interwoven with whether his arrest was constitutionally appropriate or not.

4          Second, irrespective of whether his arrest was constitutionally appropriate, Mr.

5   Holland asserts a claim for excessive force based on his allegation that Officer Brock

6   applied his handcuffs too tightly.  "It is well-established that overly tight handcuffing can

7   constitute excessive force." *Wall v. Cnty. of Orange,* 364 F.3d 1107, 1112 (9th Cir.

8   2004).  "The issue of tight handcuffing is usually fact-specific and is likely to turn on the

9   credibility of the witnesses." *See Lalonde*, 204 F.3d at 960.[15]  Nevertheless, those

10  excessive force claims based on handcuffing that the Ninth Circuit has allowed to move

11  forward generally involved significantly more egregious conduct than is at issue here—

12  either because repeated requests to loosen the handcuffs were rejected or the application

13  of handcuffs was accompanied by other forms of violence.  *See Wall*, 364 F.3d at 1112

14  (officer refused to loosen "extremely tight" handcuffing of plaintiff who was thrown into

15  squad car and driven to the police station); *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th

16  Cir. 2003) (officer placed tight handcuff on plaintiff after grabbing and twisting plaintiff's

17  arms and throwing her to the ground when she did not pose a safety risk); *LaLonde*, 204

18  F.3d at 960 (officers refused to release tight handcuffs upon request, and allowed pepper

19  _____

20         [15] Officer Brock's handcuffing of Mr. Holland and his subsequent adjustment of Mr.
    Holland's handcuffs occurred off camera.  Although the voices of Officer Brock and Mr.
21  Holland discussing Mr. Holland's handcuffs were recorded, the parties' actions with respect to
    the handcuffing are not captured on the videotape.  Accordingly, much of the evidence
    concerning this issue will turn on the credibility of the witnesses—Officer Brock and Mr.
22  Holland—rather than videotape evidence.

1  spray to remain on plaintiff's face for unnecessary length of time); *Palmer v. Sanderson*,

2  9 F.3d 1433, 1434-35 (tight handcuffs not loosened upon request).  Yet, the Ninth Circuit

3  also has reversed a grant of summary judgment in favor of police officers who were

4  alleged to have arrested a woman through excessive force resulting from a tight

5  handcuffing in facts more similar to those at hand.  *See Hansen v. Black*, 885 F.2d 642,

6  645 (9th Cir. 1989).  In that case, like here, there is no indication that the handcuffing

7  occurred for an extended period of time over the plaintiff's objection, or that other forms

8  of physical abuse accompanied the detention.  *See id.*

9       Faced with an admittedly close question in light of Ninth Circuit precedent, the

10  court declines to remove from the province of the jury this ordinarily fact-intensive

11  dispute.  Further, because the court has denied summary judgment with respect to Officer

12  Brock's defense of qualified immunity concerning Mr. Holland's arrest, the court also

13  denies summary judgment with respect to Mr. Holland's claim for excessive force with

14  respect to his handcuffing.  Whether the force utilized by Officer Brock in handcuffing

15  Mr. Holland was reasonable is too intertwined with whether Mr. Holland's detention for

16  field sobriety tests and subsequent arrest were in violation of the Fourth Amendment.

17  Because the court denied summary judgment with respect to the latter, it also denies

18  summary judgment with respect to the former.

19       **E.  Mr. Holland's Motion to Compel and State Defendants' Motion for a Stay
         of Discovery**

20

21       Mr. Holland has moved to compel the production of documents from State

22  Defendants.  (*See generally* Mot. to Compel.)  Although he complains generally about

State Defendants' production in response to his discovery requests, he specifically asserts

that State Defendants have failed to produce videotape and audiotape evidence of his

interactions with Trooper Brock at the Tukwila police station, as well as of his transport

from the Tukwila police station to the King County Adult Detention Center.  (Mot. at 2.)

In addition, he seeks the results of a blood test that he asserts was performed shortly after

his arrest, as well as Trooper Brock's "evaluation from leaders, complaints from citizens,

and any internal investigation documents, and the like for the past 7 years." (Resp. to Mot

to Stay (Dkt. # 37) at 2, 4.)  Mr. Brock also asserts that the documents that State

Defendants have failed to produce "will help prove [his] claims."  (Mot. to Compel at 2.)

He asks the court to stay its ruling on summary judgment until after produces "at the least

the audio and video files."  (*Id.*)

In response, State Defendants assert that Mr. Holland failed to hold an in-person

"meet and confer" conference prior to bringing his motion to compel as required by Local

Rule LCR 37(a)(1).  (*See* Resp. to Mot. to Compel (Dkt. # 40) at 2-3 (citing Local Rules

W.D. Wash., LCR 37(a)(1)).)  They also assert that they have produced all of the

videotapes and audiotapes associated with Mr. Holland's arrest, processing, and

transportation to either the Tukwila police department or King County Adult Detention

Center and that the blood test at issue is irrelevant.  (Resp. to Mot. to Compel (Dkt. # 38)

at 2.)  They also request that the court stay all discovery until after the court decides their

motion for summary judgment.  (*See generally* Mot. to Stay.)

1    The court grants in part and denies in part Mr. Holland's motion to compel.[16]  The

2    court disagrees that State Defendants may withhold on grounds of relevance a blood test

3    conducted shortly after Mr. Holland's arrest on suspicion of driving while intoxicated.

4    To the extent the results of this blood test exist, the court orders State Defendants to

5    produce it and all documents associate with it to Mr. Holland.  The court also orders State

6    Defendants to produce all documents, including video and audio files, specifically

7    associated with or referencing Mr. Holland's arrest and detention.  State Defendants,

8    however, have represented that there are no additional audio or video files that they have

9    not already produced to Mr. Holland (*see* Resp. to Mot. to Compel at 4-5.), and the court

10   has no reason believe otherwise.

11       The court, however, declines to defer consideration of State Defendants' motion

12   for summary judgment.  Federal Rule of Civil Procedures 56(d) provides: "If a

13   nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present

14   facts essential to justify its opposition, the court may . . . defer considering the motion or

15   deny it." Fed. R. Civ. P. 56(d)(1).  "The burden[, however,] is on the party seeking

16   additional discovery to proffer sufficient facts to show that the evidence sought exists,

17   and that it would prevent summary judgment."  *Blough v. Holland Realty, Inc*., 574 F.3d

18   _____

19       [16] Ordinarily, "[a] good faith effort to confer with a party or person not making a
     disclosure or discovery requires a face-to-face meeting or telephone conference."  *See* Local

20   Rule W.D. Wash. LCR 37(a)(1).  Because Mr. Holland is acting pro se, the court construes his
     email correspondence with State Defendants as fulfilling the "meet and confer" requirements of

21   Local Rule LCR 37(a)(1) in this instance.  In the future, however, the court instructs Mr. Holland
     to confer or attempt to confer in good faith with any party against whom he intends to file a

22   motion to compel discovery either face-to-face meeting or in a telephone conference prior to
     filing his motion.  *See id.*

1   1084, 1091 (9th Cir. 2009).  Mr. Holland has failed to show that the additional discovery

2   he seeks would alter the court's rulings in favor of State Defendants.  The additional

3   discovery Mr. Holland seeks would not affect the court's ruling with respect to Mr.

4   Holland's ineffective service of process or with respect to his failure to comply with

5   Washington's claim filing statute, RCW 4.92.100.  The additional discovery would not

6   affect State Defendants' immunity under the Eleventh Amendment or their status as

7   persons under 42 U.S.C. § 1983.  In addition, there is no indication that any of the

8   discovery sought by Mr. Holland would alter the court's ruling regarding Trooper

9   Brock's qualified immunity with respect to the initial stop of Mr. Holland for speeding.

10  Accordingly, the court denies this aspect of Mr. Holland's motion.

11      Finally, because the court has ruled on State Defendants' motion for summary

12  judgment in the course of its present order, the court denies State Defendants' motion to

13  stay discovery pending the court's ruling on its summary judgment motion as moot.

14                          **IV.   CONCLUSION**

15      Based on the foregoing, the court GRANTS in part and DENIES in part State

16  Defendants' motion for summary judgment (Dkt. # 27).  The court GRANTS in part and

17  DENIES in part Mr. Holland's motion to compel the production of documents (Dkt.

18  # 35).  The court DENIES State Defendants' motion to stay discovery as moot (Dkt.

19  # 36).

20      The court further grants Mr. Holland an additional 30 days from the date of this

21  order to accomplish proper service of process upon Trooper Brock and to file proof of

22  that service with the court.  If Mr. Holland fails to file proof of proper service of process

1  upon Trooper Brock within this period of time, Mr. Holland's remaining claims against

2  Trooper Brock will be subject to dismissal without prejudice pursuant to Federal Rule of

3  Civil Procedure 4(m).

4       Dated this 3rd day of July, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 39