The Honorable James Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DWIGHT HOLLAND<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>KING COUNTY ADULT DETENION, KING COUNTY et al., KING COUNTY DISTRICT COURT EAST DIVISION – REDMOND COURTHOUSE, et al., WASHINGTON STATE DEPARTMENT OF LICENSING et al., WASHINGTON STATE PATROL et al., OFFICER WSP ANTHONY BROCK in his individual and official capacity as Washington State Patrol Officer, LAKEYSHA NICOLE WASHINGTON in her individual and official capacity as Prosecuting Attorney, KING COUNTY PROSECUTING ATTORNEY'S OFFICE, et al., GRAY WESTSIDE TOWING LLC,<br><br>　　　　　Defendant(s). | No. 12-cv-0791 JLR<br><br>**KING COUNTY DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>Noted for: November 8, 2013 |

## I.　INTRODUCTION

This case arises from an arrest and charging of *pro se* plaintiff Mr. Holland ("Holland") with the crime of Driving While Under the Influence ("DUI"). Holland was booked into jail and

---

KING COUNTY DFENDANTS' SECOND MOTION FOR
SUMMARY JUDGMENT (12-cv-0791 JLR-MAT) - 1

**Daniel T. Satterberg,** Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington  98104
(206) 296-8820  Fax (206) 296-8819

held for approximately 10 hours. Based on his arrest, incarceration and charging, Holland has sued nine defendants and has asserted 15 causes of actions. He seeks $2.5 million dollars.

## II. RELIEF REQUESTED

King County Adult Detention, King County, King County District Court East Division, and King County Prosecuting Attorney's Office (collectively "King County") request the court dismiss *pro se* plaintiff's remaining §1983 claim against them.[1] In their first motion for summary judgment, King County Defendants only addressed the state law claim of unlawful imprisonment as they did not understand plaintiff to be raising a federal claim of unlawful imprisonment given the structure of the amended complaint. King County now asks this court to dismiss Holland's remaining 1983 claim against King County and its departments.

## III. STATEMENT OF FACTS

The facts of this case are best summarized by this Court in its October 15, 2013 order granting King County Defendants' Motion for Summary Judgment (Dkt. 64). For purposes of brevity, King County will not repeat those facts here.

## IV. EVIDENCE RELIED UPON

Defendants rely upon the previously submitted records and pleadings in this matter.

## V. AUTHORITY AND ARGUMENT

A. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is best stated by this Court in its October 15, 2013 order granting King County Defendants' Motion for Summary Judgment (Dkt. 64). For purposes of brevity, King County will not repeat the standard once again.

---

[1] The departments of a county are not stand-alone entities which can be sued and are therefore not proper defendants. *Nolan v. Snohomish County*, 59 Wn. App. 876, 883, 802 P.2d 792 (1990) ("[I]n a legal action involving a county, the county itself is the only legal entity capable of suing and being sued."). As all claims against individually named Deputy Prosecutor Washington have been dismissed, the remaining claim is made against King County.

KING COUNTY DFENDANTS' SECOND MOTION FOR
SUMMARY JUDGMENT (12-cv-0791 JLR-MAT) - 2

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

B.  **REMAINING §1983 CLAIM- UNLAWFUL IMPRISONMENT**

Holland asserts that his 10 hours and 9 minutes of incarceration in the King County Jail was unconstitutional and that he was unlawfully imprisoned during this incarceration. However, Holland makes no factual allegations against King County apart from the mere fact of his incarceration.[2] A public official is liable under §1983 only "if he *causes* the plaintiff to be subjected to deprivation of his constitutional rights." (internal citations removed, emphasis in original). *Baker v. McCollan*, 443 U.S. 137, 142, 99 S. Ct. 2689, 2693, 61 L. Ed. 2d 433 (1979). Rather, Holland has asserted that the allegedly unlawful actions of Washington State Patrol Trooper Anthony Brock caused Holland to be imprisoned in the King County Jail. In fact, the county did not have decision making authority regarding the detention of Mr. Holland. *See AGO 2004 No. 4* (explaining that a county is required to accept arrestees presented by state patrol officers at the jail for booking and housing pending disposition of charges).[3] Because Holland's complaint fails to allege any act by a King County employee that caused him to be incarcerated in a violation of his constitutional rights he has failed to state any claim upon which relief could be granted.

Even if Holland could point to a specific act or action by a King County employee, he cannot maintain a 1983 claim here. There are two essential elements to a § 1983 action; (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that his conduct deprived the plaintiff of a right or privilege secured by the constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Local governing bodies are "persons" (as opposed to the State) within the meaning of

---

[2] ECF Docket No. 7, p. 9, ¶56-61. Holland made other allegations against the County that relate to jail medical care but those have been previously addressed and dismissed. Holland's general statements about the humiliation of the routine booking process (fingerprinting, being photographed, changing into jail clothes and the temporary seizing of his property) do not conceivably amount to a constitutional violation. *See e.g. Maryland v. King*, 133 S. Ct. 1958, 1971, 186 L. Ed. 2d 1 (2013); *Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861, 1884, 60 L. Ed. 2d 447 (1979); *United States v. Pool*, 645 F. Supp. 2d 903, 907 (E.D. Cal. 2009).

[3] The Attorney General Opinion is attached hereto for the court's convenience.

KING COUNTY DFENDANTS' SECOND MOTION FOR
SUMMARY JUDGMENT (12-cv-0791 JLR-MAT) - 3

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

this section. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, because the statute prohibits persons from "subjecting" citizens to a deprivation of rights, a municipality cannot be held liable solely on a respondeat superior theory. *Id.* at 436 U.S. at 691, 98 S.Ct. at 2036.

Thus even if Holland could point to a specific act by a County employee, the County cannot be liable for the conduct of a jailer solely on the basis of respondeat superior. *Honz v. State of Washington et al.*, 105 Wn.2d 302, 714 P.2d 1176 (1986); *Castro v. City of Hanford*, 546 F. Supp. 2d 822, 826 (E.D. Cal. 2008). Absent a showing that the unconstitutional actions executed by county policy or custom, the County cannot be subject to § 1983 liability under *Monell*. *Castro*, 546 F.Supp 822 at 826. As the conclusory allegations in Holland's Complaint do not establish a viable 42 U.S.C. § 1983 action, summary judgment is appropriate.

## VI. CONCLUSION

For the reasons stated above, defendants request their motion for summary judgment be granted and that the remaining claim against King County Defendants be dismissed.

DATED this 17 day of October, 2013 at Seattle, Washington.

DANIEL T. SATTERBERG
King County Prosecuting Attorney

By: /s/ *Samantha D. Kanner*
SAMANTHA D. KANNER, WSBA #36943
Deputy Prosecuting Attorney
King County Prosecuting Attorney's Office
Email: Samantha.Kanner@kingcounty.gov
Attorneys for Defendants

KING COUNTY DFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (12-cv-0791 JLR-MAT) - 4

Daniel T. Satterberg, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820 Fax (206) 296-8819

**DECLARATION OF FILING AND SERVICE**

I hereby certify that on October 17, 2013, I electronically filed the foregoing document with the clerk of the court via the CM/ECF e-filing portal. I further certify that the above listed documents were sent to the following parties via CM/ECF e-service:

Dwight Holland
Dmanh3@comcast.net

Tobin Dale
TobinD@atg.wa.gov

I declare under penalty of perjury under the laws of the United States and the State of Washington that the foregoing is true and correct.

DATED this 17th day of October, 2013 at Seattle, Washington.

s/ Rachael Viars
RACHAEL VIARS, Legal Secretary
Litigation Section

KING COUNTY DFENDANTS' SECOND MOTION FOR
SUMMARY JUDGMENT (12-cv-0791 JLR-MAT) - 5

**Daniel T. Satterberg**, Prosecuting Attorney
CIVIL DIVISION, Litigation Section
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
(206) 296-8820  Fax (206) 296-8819

**OPINIONS** | Christine Gregoire | 1993-2004 | Attorney General of Washington

COUNTIES – JAILS – SHERIFF – STATE OFFICERS – STATE PATROL – Responsibility of county jail to accept for booking persons arrested and presented at the jail by state patrol officers or other state employees with law enforcement powers.

1. A county sheriff, as supervisor of the county jail, is required to accept arrestees presented at the jail for booking and housing pending disposition of charges, whether the arrestees are presented by county officers, by state patrol officers, or by other state employees with criminal law enforcement responsibilities.

2. The county sheriff does not have authority to (1) limit the hours during which the county jail will accept arrestees presented for booking by state officers, or (2) limit the number of arrestees that can be presented during a stated time period.

3. RCW 43.135.060 does not require the state to reimburse counties for the cost of booking or housing arrestees presented at the county jail by state patrol officers or other state employees, since this practice is neither a "new program" nor an "expansion of an existing program."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

December 23, 2004

The Honorable Jeremy Randolph
Lewis County Prosecuting Attorney
360 NW North Street
Chehalis, WA 98532-1900

Cite As:

AGO 2004 No. 4

Dear Prosecutor Randolph:

By letter previously acknowledged, you have asked for an opinion on the following questions, slightly paraphrased for clarity:

> 1. In the absence of a contractual relationship, is a county sheriff obligated to accept custody of arrestees presented for booking by agents of the state (i.e., the Washington State Patrol (WSP), the Department of Fish & Wildlife (DFW), the Department of Corrections (DOC), etc.)?
>
> 2. Does the answer to Question 1 depend on the nature of the crime charged (i.e., misdemeanor, gross misdemeanor, or felony)?
>
> 3. If there is a general duty to accept arrestees presented by state agents, may the county sheriff limit the hours within which the state may present [*original page 2*] arrestees or

Share

limit the number of arrestees that state agents may present for booking?

4. If there is a general duty to accept arrestees presented by state agents, does RCW 43.135.060 require the state to reimburse the county for costs associated with booking and housing the arrestees?

### BRIEF ANSWERS

1. A county jail has a duty to accept custody of arrestees presented for booking by any officers possessing the power to arrest and charge crimes alleged to have occurred within the county, no matter what the nature of the crime charged.

2. A county jail lacks the authority to (1) limit the hours within which officers may present arrestees for booking, or (2) limit the number of arrestees presented for booking.

3. The duty of a county jail to accept arrestees for booking is not a "new program or an increased level of service under existing programs" requiring the state to reimburse the county for costs associated with booking and housing the arrestees.

### ANALYSIS

Background and Definitions

Your questions are about the authority of a county sheriff acting in the capacity of supervisor of the county jail. "Jail" is defined by statute as "any holding, detention, special detention, or correctional facility as defined in [RCW 70.48.020]." RCW 70.48.020(5). Counties are authorized to locate and operate jails and certain other correctional facilities.[1] RCW 70.48.180. A county may establish a department of corrections to be in charge of its jail, but if it does not create such a department, the chief law enforcement officer of the county has charge of the jail and of persons confined therein. RCW 70.48.090(3). Thus, when your opinion request refers to a "county sheriff," we understand that to be the sheriff acting in the capacity of supervisor of a county jail.

The opinion request makes reference to accepting custody of arrestees for "booking." Although there is no specific statutory definition for this term, we defined it in an earlier opinion as "the process of taking an arrested person to a city or county office to record the person's name and the offense with which he is charged." AGO 1988 No. 9, at 4-5.[2] Your questions, then, *[original page 3]* concern the responsibilities of the county jail when an arrestee is presented at the jail for booking, and the officer who has made the arrest is not a member of the sheriff's department but is an employee of a state agency, such as a state patrol officer or some other state employee who has the power to make arrests for violations of the state's criminal laws.

**1. In the absence of a contractual relationship, is a county sheriff obligated to accept custody of arrestees presented for booking by agents of the state (i. e., the Washington State Patrol (WSP), the Department of Fish & Wildlife (DFW), the Department of Corrections (DOC), etc.)?**

**2. Does the answer to Question 1 depend on the nature of the crime charged (i.e., misdemeanor, gross misdemeanor or felony)?**

In two previous formal opinions, we have considered at some length a question closely analogous to the one presented here and, in one of them, we touched upon the very issue raised in your opinion request. In AGO 1980 No. 21 (copy enclosed), we considered whether the county was obligated to pay the costs connected with custody of a prisoner originally arrested by an officer of a city or town, rather than by a county officer. We concluded that the county, and not the city or town, was financially responsible for the costs of booking and housing such an arrestee—based on language in RCW 36.01.060—which provides that "each county shall be liable to pay . . . the fees of the sheriff for maintaining prisoners charged with crimes." In reaching that conclusion, we considered (in passing) the costs of confinement for a prisoner arrested by a state patrol officer and specifically rejected the notion that the state would be liable for these costs. AGO 1980 No. 21, at 3.[3]

The request giving rise to AGO 1980 No. 21 concerned persons arrested and charged with felonies. In AGO 1988 No. 9 (copy enclosed), we concluded that the same analysis applied to police officers arresting for misdemeanors or gross misdemeanors. In the 1988 opinion, which concerned arrests made by city or town officers, we concluded that a county had no authority to charge the city or town for booking, jailing, or prosecution of arrestees presented for jail custody by city or town officers.[4] The 1988 opinion contains no discussion of costs associated with arrests by state officers.

While the 1980 and 1988 opinions do not directly answer your present questions, we adopt the same analysis. This begins with the proposition that, as a general rule, "counties are burdened with the cost of administering the criminal laws within their boundaries". *State v. Agren*, 32 Wn. App. 827, 828, 650 P.2d 238 (1982). In *Agren*, the Court of Appeals rejected a [*original page 4*] claim that a county was entitled to state reimbursement for court costs awarded to a criminal defendant, finding that these costs were properly taxable against the county and not the state.

In the area of criminal law enforcement, the law allows no drawing of a "bright line" between state and county responsibility. As the *Agren* opinion recognized, counties are political subdivisions of the state, and many of the functions they perform are "state" functions conducted through locally-chosen officers. Although the criminal law is primarily "state" law enacted by the Legislature, most criminal law enforcement is conducted by locally-elected officers (sheriffs, prosecuting attorneys, and judges). The allocation of the costs of the criminal justice system is based as much on history as on logic, and it derives from state statute.

The responsibility of counties to provide jails dates to the territorial days:

> The county in which the court is held shall furnish the court house, a jail or suitable place for confining prisoners, books for record, stationery, lights, wood, attendance, and other incidental expenses of the court house and court which are not paid by the United States.

RCW 2.28.139 (derived from Laws of 1863, § 11, p. 425, and last amended by Laws of 1869, § 10, p. 421). In other words, since before statehood, state law has allocated to the counties certain costs associated with criminal law enforcement, and one of those is the duty to provide a jail.

As noted in the 1980 and 1988 opinions, the duty of a county to provide jail services (booking arrestees and housing prisoners when confined to the county jail) has never varied based on whether the officer making the arrest is a county officer

(the sheriff or a sheriff's deputy), a city or town officer, or an officer on the state payroll. These officers have concurrent or at least overlapping jurisdiction to enforce the criminal laws,[5] and there is no logic in suggesting that the county has a duty to book and jail someone arrested by a sheriff's deputy but no duty to book or take custody of someone arrested for an identical offense by a state patrol officer or by an officer employed by another state agency.

The City and County Jails Act, codified as RCW 70.48, largely delineates the boundaries of state and local financial responsibility for housing prisoners. One provision limits the costs chargeable when a prisoner is temporarily confined to a jail. "Any jail within the state may be used for the temporary confinement of the prisoner with the only charge being for the reasonable cost of board." RCW 70.48.230. Another section provides that when a person imprisoned in a jail is sentenced to a state institution for a felony conviction, that person will be transferred to a state institution "before the forty-first day from the date of sentencing." RCW 70.48.240. The state generally assumes financial responsibility for such prisoners not later than the eighth day after sentencing, with certain exceptions. RCW 70.48.240, .410. The Office of Financial [*original page 5*] Management is directed by RCW 70.48.440 to "establish a uniform equitable rate for reimbursing cities and counties for the care of sentenced felons who are the financial responsibility of the department of corrections and are detained or incarcerated in a city or county jail." Finally, the Department of Corrections has the authority to contract with counties concerning the costs of incarcerating prisoners not covered by RCW 70.48.400 through .450. RCW 70.48.460.

The pattern that emerges from these statutes is that counties have financial responsibility for costs associated with (1) booking and housing prisoners confined to the county jail before trial and sentencing, and for (2) defendants who are sentenced to a period of confinement in the county jail. Defendants sentenced to serve time in state institutions become the financial responsibility of the state eight days after sentencing (with certain exceptions not directly relevant here). This cost allocation applies no matter who made the arrest leading to detention. Thus, the county jail has no authority to refuse to accept prisoners presented for booking and detention by a state officer, just as the state would have no authority to refuse to accept prisoners originally arrested by sheriff's deputies and later sentenced to confinement in a state institution. Furthermore, the financial responsibility of the county does not depend on whether a person was arrested for committing a felony or a misdemeanor.

**3. If there is a general duty to accept arrestees presented by state agents, may the county sheriff limit the hours within which the state may present arrestees or limit the number of arrestees that state agents may present for booking?**

Since (as noted above) counties have the basic financial responsibility for the costs of the criminal justice system up to (and sometimes beyond) conviction and sentencing, it follows that a county may not arbitrarily escape this responsibility by limiting the hours during which it will accept arrestees for processing or by limiting the number of arrestees processed in a given time period. Crimes and arrests unfortunately happen at unpredictable hours and with unpredictable frequency. If an officer has occasion to apprehend a person for alleged criminal activity (perhaps after witnessing a crime, or in the process of executing an arrest warrant), the officer must have some place to deliver the arrestee for booking so the criminal justice process can continue. If the county jail is unavailable for this purpose (because it has limited hours or has limited the number of arrestees it will accept), the arresting officer has the following alternatives, all unreasonable: (1) foregoing the arrest, (2) delaying the

arrest until a jail is available, (3) keeping the arrestee in the officer's personal custody for an extended period of time, or (4) delivering the arrestee to another more distant jail. Each of these alternatives would seriously hamper law enforcement and could also lead to other types of legal complications.

It is doubtful that a county sheriff could even limit the hours during which the jail would accept for booking persons arrested by the sheriff's own deputies, or limit the number of arrestees presented in a given time period. Sheriffs have a statutory duty "to make complaint of all violations of the criminal law, which shall come to their knowledge, within their respective jurisdictions." RCW 36.28.011. The state Supreme Court has held that this duty is mandatory, and sheriffs do not have discretion to determine whether a violation of the law is better handled by "surveillance" than by arrest and commitment. *State v. Twitchell*, 61 Wn.2d 403, 378 P.2d 444 (1963). If criminal activity occurs within a county, a sheriff cannot forego or delay making **[original page 6]** arrests because it would be costly or inconvenient for the jail to book and house more people. By the same token, the sheriff cannot refuse to book arrestees detained by other officers who made arrests in circumstances where the sheriff's deputies would otherwise have been responsible for enforcing the law.

**4. If there is a general duty to accept arrestees presented by state agents, does RCW 43.135.060 require the state to reimburse the county for costs associated with booking and housing the arrestees?**

RCW 43.135.060 is a statute limiting the extent to which the Legislature may impose new costs on local government without providing the funding associated with these costs. Originally enacted as an initiative (Laws of 1980, ch. 1, § 6 (Initiative 62)) and subsequently modified and reaffirmed by another initiative (Laws of 1994, ch. 2, § 5 (Initiative 601)), this statute provides that "[a]fter July 1, 1995, the legislature shall not impose responsibility for new programs or increased levels of service under existing programs on any political subdivision of the state unless the subdivision is fully reimbursed by the state for the costs of the new programs or increases in service levels." RCW 43.135.060(1).

Although the courts have held that this statute requires the state to assume certain types of costs, the case law does not establish that the state is generally liable to reimburse political subdivisions for all costs associated with implementing or administering state laws. Each time, the courts have focused on the impact of specific legislation. In *City of Tacoma v. State*, 117 Wn.2d 348, 816 P.2d 7 (1991), the Supreme Court found that RCW 43.135.060 required the state to reimburse counties for the impacts caused by amendments to the Domestic Violence Prevention Act, which imposed specific enforcement duties on county officers beyond those set forth in previous law. Earlier, in *State v. Howard*, 106 Wn.2d 39, 722 P.2d 783 (1985), the Supreme Court held that the state, rather than the county indigent defense fund, was responsible to pay expenses for prosecuting an indigent defendant where the prosecution was conducted by the attorney general pursuant to a new statute granting additional prosecuting authority to the state. On the other hand, the courts found no responsibility to reimburse local government for the cost of installing courtroom equipment to comply with new court rules (*City of Seattle v. State*, 100 Wn.2d 16, 666 P.2d 359 (1983)), or for the cost of complying with the rules adopted by the Columbia Gorge Commission, an agency formed by an interstate compact approved by the federal government (*Klickitat Cy. v. State*, 71 Wn. App. 760, 862 P.2d 629 (1993)).

Your questions concern the possible liability of the state for the costs of booking and housing arrestees presented by state officers to county jails. As discussed above, this is in no sense a "new program." Counties have borne the financial

responsibility for booking and housing arrestees and maintaining jails since before statehood. Furthermore, we are unaware of any legislation enacted since 1995 which imposes a responsibility for increased levels of service on counties with respect to accepting arrestees presented for booking by state officers.[6][*original page 7*] Furthermore, as discussed above, the Legislature has crafted a scheme allocating which costs associated with keeping prisoners are borne by the state and which are borne by the county. Accordingly, we conclude that RCW 43.135.060 imposes no obligation on the state to reimburse the county under the circumstances described.

    We trust this opinion will be of assistance to you.

                        Sincerely,

                        JAMES K. PHARRIS
                        Senior Assistant Attorney General

:pmd

---

[1] Cities and towns are also authorized to construct and operate jails. RCW 70.48.190. Regional jails may also be created and operated by agreement of two or more local governments, or by one or more local governments and the state. RCW 70.48.095. Counties and cities have authority to join in interlocal contracts for jail services. RCW 70.48.090. From the phrasing of your questions, we have analyzed the law relating to county jails rather than city or regional jails, although the analysis is probably very similar.

[2] In 2000, the Legislature passed an act directing the Washington Association of Sheriffs and Police Chiefs to implement and operate an electronic statewide city and county jail booking and reporting system. RCW 36.28A.040(1) (Laws of 2000, ch. 3, § 1, *as amended by* Laws of 2001, ch. 169, § 3). This statute does not contain a definition of "booking", but it does list the minimum information the booking and information system should contain. RCW 36.28A.040(4).

[3] We also considered, and similarly rejected, the notion that a private citizen making a lawful arrest for commission of a crime and presenting the arrestee at the jail for detention would be financially liable for the costs of confining the arrestee pending further proceedings. AGO 1980 No. 21, at 3.

[4] In AGO 1988 No. 9, we recognized that counties might have a cause of action against certain cities to recoup costs resulting from the abolition of city or town criminal codes or termination of municipal courts. AGO 1988 No. 9, discussion at 6-9. *See also* RCW 3.50.800-.810 (these statutes do not appear to be pertinent to the present discussion).

[5] Note, for instance, that the powers of state patrol officers are to "exercise, throughout the state, such police powers and duties as are vested in sheriffs and peace officers generally, and such other powers and duties as are prescribed by law." RCW 43.43.030 (dating to Laws of 1933, ch. 25, § 2). *Cf.* RCW 36.28.010(1) (sheriff and deputies shall "arrest and commit to prison all persons who break the peace, or attempt to break it, and all persons guilty of public offenses"). In other words, within a county, state patrol officers and sheriff's deputies have the same powers and duties with respect to criminal law enforcement.

[6] As noted earlier, the authority of state officers to arrest is essentially concurrent with that of the sheriff's office. In that sense, when a state patrol officer (for example) presents an arrestee at the jail for booking who is charged with committing some crime within the county, the state officer has performed duties (apprehending a possible criminal) which otherwise would have fallen on the sheriff's

office. Thus, the acts of the state officer impose no obligations on the county which would not have fallen on the county anyway had a sheriff's deputy made the same arrest. Furthermore, the sheriff cannot argue that he or she might have saved the county money by not making the arrest in question, because the sheriff's duties in this regard are mandatory and not discretionary. *State v. Twitchell*, 61 Wn.2d 403, 378 P.2d 444 (1963).