1
2
3
4
5
6
7                                                    The Honorable James Robart

8                      **UNITED STATES DISTRICT COURT**
                      **WESTERN DISTRICT OF WASHINGTON**
9                                **AT SEATTLE**

10   DWIGHT HOLLAND,                          NO.  12-cv-0791 JLR

11          Plaintiff,                         DEFENDANT WASHINGTON
                                               STATE PATROL ANTHONY
12      v.                                     BROCK'S TRIAL BRIEF

13   OFFICER WSP ANTHONY BROCK in
     his individual and official capacity as
14   Washington State Patrol officer,

15          Defendant.

16                     **I.      INTRODUCTION**

17          Defendant Washington State Patrol Trooper Anthony Brock (defendant or "Trooper

18   Brock") respectfully submits the following summary of the legal and factual issues remaining

19   for the January 21, 2014 trial of this case.

20                  **II.      STATEMENT OF THE CASE**

21          This case arises from a straight-forward DUI arrest of *pro se* plaintiff Mr. Holland

22   ("Holland").  He exhibited multiple indicators of intoxication, refused the Field Sobriety Test,

23   and refused the Breath Test.  Holland claims he was arrested for "driving while black" – not

24   because of DUI.  In his complaint, he seeks $2.5 million dollars.

25          The arrest and transport of Holland was audio and video recorded by Trooper Brock's

26   in-car video camera.   Early Friday morning, on September 16, 2011 at approximately

DEFENDANT WASHINGTON STATE                    1          ATTORNEY GENERAL OF WASHINGTON
PATROL ANTHONY BROCK'S TRIAL BRIEF                                 Torts Division
                                                             800 Fifth Avenue, Suite 2000
                                                              Seattle, WA 98104-3188
                                                                 (206) 464-7352

1:32 a.m., Trooper Brock was parked just south of the 1st Avenue Bridge (on the left shoulder of southbound SR-509). He was working speed enforcement in a marked patrol vehicle. Trooper Brock observed a pickup truck crossing over the bridge, approaching his vehicle from the rear. Trooper Brock's Radar clocked this vehicle traveling 58 mph in a 45 mph zone. This was the only vehicle approaching Trooper Brock at the time his Radar clocked this speed. Trooper Brock activated his patrol vehicle's emergency lights and proceeded to pull over the pickup truck. The driver was later identified as Holland.

As can be seen on the video, Trooper Brock contacted the vehicle on the driver's side. Trooper Brock did not stop Holland because Holland was "driving while black," as he alleges. Trooper Brock stopped Holland because he was speeding. In fact, Trooper Brock was not aware of Holland's race or ethnicity until he was at his driver's side window.

The driver (Holland) rolled down the driver's window approximately one-half inch. Holland attempted to talk with Trooper Brock with his head turned away from Trooper Brock. As can be heard on the video, Trooper Brock used a very professional, polite tone with Holland. He explained he clocked him going 58 mph in a 45 mph zone. Trooper Brock asked Holland to roll down the window because he could not hear him. (In the video, the loud background noise of passing cars can be heard.) Holland rolled the window down another half inch, but would not roll it down any further. Through the opening in the window, Trooper Brock smelled an obvious odor of alcohol coming from inside the vehicle. Holland stated he was coming from a friend's house. (This statement was not accurate. At his deposition, he testified he left his girlfriend's house in Auburn and traveled to Alki Point in Seattle because he "love[d] the water". En route from Alki Point for his home in Renton he was stopped.) Trooper Brock observed that Holland's eyes were very red, bloodshot and droopy. Trooper Brock asked Holland to exit the vehicle.

Once Holland was outside of his vehicle, Trooper Brock asked him how much alcohol he had to drink that night. Holland responded: "I'm pleading the 5th, Sir." Trooper Brock

DEFENDANT WASHINGTON STATE
PATROL ANTHONY BROCK'S TRIAL BRIEF

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

asked him if he would do some voluntary field sobriety tests. Holland responded: "I'm pleading the 5th, Sir." Trooper Brock explained to him that he wanted to make sure that Holland was "OK" to drive. Trooper Brock repeatedly asked him if he wanted to perform the tests, and each time Holland refused to say "yes" or "no"; he just stated he pleaded the 5th and did not want to incriminate himself. He refused to participate in any field sobriety tests.

While talking with Holland, Trooper Brock smelled alcohol on his breath. As Holland stood in front of Trooper Brock at the front of Holland's truck, Holland had a constant sway and repeatedly reached back and used the front of his truck for balance. After considering all of the above indicators, Trooper Brock formed the opinion that Holland was under the influence of intoxicants and unable to operate a motor vehicle safely. Holland was placed under arrest for suspicion of driving under the influence ("DUI").

Prior to placing Holland in the backseat of his patrol vehicle, Trooper Brock handcuffed Holland. As Holland has wide shoulders, Trooper Brock combined two sets of handcuffs to make them longer in length and seated him in the backseat. After being in handcuffs for <u>less than 2 ½ minutes</u>, he complained they were too tight. <u>40 seconds</u> after he complained Trooper Brock helped him out of the patrol car and adjusted them. He explained why they were binding – which was due to Holland turning his wrists. This entire exchange took about two and a half minutes. Holland <u>never again mentioned</u> any handcuff discomfort to Trooper Brock. The entire transport from the scene to the police station was video and audio recorded, and Holland never mentioned any discomfort. Holland's King County Jail records show he did not make any complaints about pain, discomfort, or any injuries from the handcuffs.

Trooper Brock read Holland his Miranda warnings and asked him if he understood them. Holland responded: "No, I do not and I'm not giving up my rights. I'm reserving my rights under UCCC 1-308." Trooper Brock advised Holland that he was not asking him to give

DEFENDANT WASHINGTON STATE
PATROL ANTHONY BROCK'S TRIAL BRIEF

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1  up his rights, but was asking him if he understood them.  Holland responded: "I'm reserving

2  my rights.  I'm waiving my benefits and privileges under UCC 1-08."

3      Trooper Brock transported Holland to the Tukwila Police Department.  Holland's

4  transport was also video recorded, with the camera facing Holland.  Like the arrest footage, the

5  transport footage shows the transport was uneventful.  During this transport, the patrol car was

6  filled with the smell of intoxicants from Holland.

7      At the Tukwila Police Department, Trooper Brock read Holland his Miranda warnings

8  again, as well as the "Implied Consent Warning for Breath" test.  Holland repeatedly stated he

9  pled the 5th and was not going to do anything to incriminate himself.  Trooper Brock asked

10  Holland if he would submit to a breath test.  Holland responded: "I'm not going to do anything

11  to incriminate myself."  Trooper Brock patiently advised Holland that this was a "yes" or "no"

12  question and that if he did not give an answer then Trooper Brock would assume that he

13  refused.  Holland responded that this was a trick question, and that he was not going to do

14  anything to incriminate himself.  Trooper Brock took these responses as a refusal to submit to

15  the breath test and processed him as a refusal.  Accordingly, his driving privileges were

16  revoked for one year effective November 16, 2011.

17      At no point in time did Trooper Brock use any derogatory language or racial slurs

18  against Holland.  At all times, Trooper Brock was polite and professional with Holland, as

19  evidenced on the audio and video recording.

20      Following his arrest, Holland was charged with DUI.  The King County District Court

21  made a "Finding of Probable Cause" on January 9, 2012:  Specifically, the court found:

22          After a careful review of the files and records herein including the
23      statement of probable cause executed by the citing law enforcement
        officer along with any report submitted by that officer and any
24      accompanying documentation to that report.

25          THE COURT HEREBY FINDS PROBABLE CAUSE EXISTS that on
        09/16/2011 the crime of DUI may have been committed.

26

DEFENDANT WASHINGTON STATE                      4        ATTORNEY GENERAL OF WASHINGTON
PATROL ANTHONY BROCK'S TRIAL BRIEF                                Torts Division
                                                              800 Fifth Avenue, Suite 2000
                                                               Seattle, WA 98104-3188
                                                                   (206) 464-7352

1   The DUI charge in the criminal proceeding was dismissed because the State was "unable to

2   prove the charges beyond a reasonable doubt". Trooper Brock provided no testimony in this

3   matter, and he was not contacted with regard to this criminal proceeding.

4          Holland has failed to take steps to mitigate his damages, if any. He has never sought

5   treatment for his alleged emotional distress. Nor has he identified any expert to opine on this

6   subject. He sought treatment one time for his right wrist; this was two weeks after this

7   incident. Finally, years after this arrest, his driving privileges have not been restored because

8   he has not provided DOL with financial responsibility insurance for the future (an SR 22

9   Insurance Filing), or passed all required tests.

10                            **III.     ISSUES FOR TRIAL**

11         The court found as a matter of law that "Trooper Brock had reasonable, articulable

12  suspicion to stop Mr. Holland on an investigatory traffic stop for speeding . . ."[1] As stated in

13  the parties' agreed PreTrial Order,[2] the following narrow issues remain for trial:

14  1.     Did Trooper Brock have probable cause to arrest plaintiff under the Fourth Amendment?

15  2.     Was Trooper Brock's use of "force" in handcuffing plaintiff reasonable under the

16  circumstances?

17  3.     Is Trooper Brock entitled to qualified immunity?

18         This case distills down to two issues: whether Trooper Brock had probable cause to

19  arrest Holland, and whether the "force" from handcuffing was reasonable. The parties' Joint

20  Jury Instruction ("Joint Instruction") No. 2 provides a summary of these claims.

21  **A.     Reasonable Suspicion Established**

22         Because the Court found that Trooper Brock had "reasonable, articulable suspicion to

23  stop Mr. Holland,"[3] the jury should so be instructed. Thus, Joint Instruction No. 20 instructs

24  the jury that Trooper Brock had lawful grounds to conduct a traffic stop of Holland.

25  _____
    [1] ECF No. 42, p. 25:9-12.
    [2] ECF No. 84, p. 3.
26  [3] ECF No. 42, p. 25:9-12.

1   The jury need not be instructed on reasonable suspicion to conduct a voluntary field

2   sobriety test for several reasons.  First, it is undisputed no field sobriety test was conducted;

3   Holland refused.  Second, the crux of this case is whether there was probable cause to arrest.

4   Whether probable cause existed to arrest for DUI necessarily subsumes the much lessened

5   standard of whether reasonable suspicion existed to conduct a field sobriety test.  Third, the

6   parties agree this is not an issue for the jury.  At issue is probable cause for his arrest.

7   **B.      Probable Cause to Arrest for DUI**

8   The crux of this case is whether probable cause existed to arrest Holland for DUI.

9   Trooper Brock contends he had probable cause to arrest.  Accordingly, Joint Instruction No. 21

10  follows the 9th Circuit Model Instruction 9.20 (probable cause) and identifies the elements of

11  DUI (RCW 46.61.502).

12  Joint Instruction No. 22 informs the jury when probable cause exists to arrest a suspect

13  for DUI.  *See Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007)(holding that the officer,

14  who observed several indicators of excessive alcohol consumption, had probable cause to

15  arrest driver); *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006)(holding that motorist's

16  refusal to take a Breathalyzer test, coupled with the smell of alcohol from the vehicle, gave the

17  officer probable cause to arrest motorist).  This is consistent with *Summers v. State of Utah,*

18  927 F.2d 1165 (10th Cir.1991), in which the Tenth Circuit wrote: "The undisputed facts

19  regarding plaintiff's operation of his vehicle, the officer's scent of alcohol emanating from the

20  vehicle and plaintiff's refusal to take a field sobriety test substantiate the . . . conclusion" that

21  the officer had probable cause.  *Id.* at 1166.

22  So that the jury is clear that probable cause does not require proof beyond a reasonable

23  doubt, the parties propose Joint Instruction No. 23.  *Maryland v. Pringle*, 540 U.S. 366, 371,

24  (2003); *Illinois v. Gates,* 462 U.S. 213, 235 (1983) ("Finely tuned standards such as proof

25  beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have

26  no place in the [probable-cause] decision").

DEFENDANT WASHINGTON STATE
PATROL ANTHONY BROCK'S TRIAL BRIEF

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1    In Washington State, by statute, those who drive vehicles have given consent to have

2    their breath tested for alcohol concentration.  If a driver refuses, the driver's license is revoked

3    for one year by statute.  *See* RCW 46.61.502; RCW 46.20.308; RCW 46.20.3101.  Here,

4    Holland refused the breath test and his license was revoked for one year.  So the jury

5    understands this is governed by state statute – and not at the discretion of Trooper Brock – the

6    parties propose Joint Instruction No. 24.

7        Throughout this incident, Holland asserted his Fifth Amendment privilege.  To ensure

8    that the jury understands that this privilege does not apply to Field Sobriety Tests or to Breath

9    Tests, Joint Instruction No. 25 should be given.  These tests are non-testimonial, and therefore

10   are not subject to the Fifth Amendment.  Accordingly, suspects may not refuse these tests on

11   the grounds of their Fifth Amendment privilege.  Likewise, *Miranda* warnings do not need to

12   be given prior to such tests.  *Heinemann v. Whitman County*, 105 Wn.2d 796 (1986); *Mercer*

13   *Island v. Walker*, 76 WN.2d 607 (1969); *City of Seattle v. Stalsbroten*, 138 Wn.2d 227, 978

14   P.2d 1059 (1999); *State v. Moore*, 79 Wn.2d 51, 56-57, 483 P.2d 630 (1971).  This instruction

15   is imperative to avoid confusion by the jury over what Trooper Brock could or could not do

16   after Holland asserted his Fifth Amendment privilege.  Without this instruction, the jury may

17   question whether Trooper Brock could ask if Holland would perform a Field Sobriety Test or

18   submit to a Breath Test, and do so without providing *Miranda* warnings.  That is not at issue in

19   this case.  This jury instruction provides that necessary clarification.

20       Finally, Holland's state of intoxication cannot be used as an excuse for his behavior.  In

21   Washington no act committed by a person while in a state of voluntary intoxication shall be

22   deemed less criminal by reason of his condition.  RCW 9A.16.090.  Accordingly, the jury

23   should be provided the parties' Joint Instruction No. 31 on this point.  The defendant has ample

24   evidence to show Holland was DUI.

25

26

**C.      Whether the Force Used from Handcuffing was Reasonable**

Here, Holland's "excessive force" claim is based on his allegation that his handcuffs were too tight.  The undisputed evidence is that after Holland had been handcuffed for less than 2 ½ minutes, he complained they were too tight.  40 seconds later Trooper Brock removed him from the patrol car and proceeded to adjusted them.  Holland never again mentioned any handcuff discomfort to Trooper Brock.

In this case, there is no evidence that would permit the jury to conclude that Trooper Brock applied unreasonable force in handcuffing Holland.  Alternatively, even if some degree of force used in tightly handcuffing Holland was deemed to be excessive, a reasonable officer could have thought the "force" was needed, entitling Trooper Brock to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *overruled on other grounds* by *Pearson v. Callahan*, 129 S.Ct. 808 (2009).

Regarding the reasonableness of that force, the parties propose the 9th Circuit Model Instruction No. 9.22 (excessive force) be used (Joint Instruction No. 28).

So the jury understands that merely being placed in handcuffs and transported to the police station is not excessive force but standard practice, Defendant Trooper Brock's Disputed Instruction No. 29 should be given.   "Merely being handcuffed and taken to the police station . . . is not excessive force, but standard police practice."  *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 637 (S.D. Texas 2001).  "Handcuffing an arrestee is standard practice, everywhere."  *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 964 (9th Cir. 2000).

Finally, Washington courts have long held that a police officer has the duty to enforce all laws and ordinances within his or her jurisdiction and to take reasonable corrective action to prevent or stop a violation where he or she has actual knowledge of a violation.  *Bailey v. Forks*, 737 P.2d 1257 (Wash. 1987).  Trooper Holland was not obliged to ignore criminal law violations.  Accordingly, Joint Instruction No. 26 is proposed.

DEFENDANT WASHINGTON STATE
PATROL ANTHONY BROCK'S TRIAL BRIEF

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

**D.     Qualified Immunity**

Joint Instruction No. 27 provides the standard for qualified immunity.  The Court earlier determined that certain factual disputes prohibited a finding of qualified immunity for Trooper Brock.  The defendant believes that should Holland fail to adduce contradictory facts in his case in chief, or if the jury resolves the disputed facts in the defendant's favor by response to special interrogatories, the Court must revisit the qualified immunity question and dismiss Trooper Brock.  If the Court deems the qualified immunity issue too intertwined with the factual and legal considerations underpinning Holland's claims, however, the defendant respectfully urges the Court to instruct the jurors on the proper standard for their determination on the issue.  Absent such precaution the defendant could be deprived of a significant right and defense solely due to "facts" fabricated specifically for that purpose.

**E.     Mitigation of Damages**

Finally, at trial evidence will be presented that Holland has failed to mitigate his damages, if any.  The parties propose 9th Circuit Model Instruction No. 5.3 on mitigation (Joint Instruction No. 33).

This case is straightforward and should be presented to the jury in that fashion.  Practically speaking, they need only determine two issues – whether Trooper Brock had probable cause to arrest and whether the force used in handcuffing Holland was reasonable.

DATED this 13th day of January, 2014.

ROBERT W. FERGUSON
Attorney General


*s/ Tobin E. Dale* _____
TOBIN E. DALE, WSBA No. 29595
Assistant Attorney General
800 Fifth Ave., Ste. 2000; Seattle, WA 98104-3188
Tel: (206) 464-7352; Fax: (206) 587-4229
E-mail:  TobinD@atg.wa.gov
Attorneys for Defendant Trooper Brock

DEFENDANT WASHINGTON STATE
PATROL ANTHONY BROCK'S TRIAL BRIEF

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7352

1

## CERTIFICATION OF SERVICE

2        I hereby certify that on this 13th day of January, 2014, I caused to be electronically filed

3  the foregoing document with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to:

5  Dwight Holland:  dmanh3@comcast.net

6

7                                                    */s/ Tobin E. Dale*
                                                    TOBIN E. DALE, WSBA No. 29595
8                                                    Assistant Attorney General
                                                    800 Fifth Ave., Ste. 2000; Seattle, WA 98104-3188
9                                                    Tel: (206) 464-7352; Fax: (206) 587-4229
                                                    E-mail:  TobinD@atg.wa.gov
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT WASHINGTON STATE                          10            ATTORNEY GENERAL OF WASHINGTON
PATROL ANTHONY BROCK'S TRIAL BRIEF                                        Torts Division
                                                                   800 Fifth Avenue, Suite 2000
                                                                    Seattle, WA 98104-3188
                                                                        (206) 464-7352